[No. B203443. Second Dist., Div. Four. Nov. 13, 2008.]

OCM PRINCIPAL OPPORTUNITIES FUND, L.P., et al., Plaintiffs and Respondents, v.
CIBC WORLD MARKETS CORP., Defendant and Appellant.

TCW SHARED OPPORTUNITY FUND II, L.P., et al., Plaintiffs and Respondents, v.
CIBC WORLD MARKETS CORP., Defendant and Appellant.

**COUNSEL**

Mayer Brown, Donald M. Falk, Neil M. Soltman, Fredrick S. Levin and Melissa J. Pastrana for Defendant and Appellant.

Hennigan, Bennett & Dorman, J. Michael Hennigan, Michael Swartz, Allison Chock; Greines, Martin, Stein & Richland, Irving H. Greines and Marc J. Poster for Plaintiffs and Respondents.

OPINION

MANELLA, J.—After respondents renewed a judgment in their favor, the trial court denied a motion by appellant CIBC World Markets Corp. (CIBC) to vacate the renewed judgment. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is the second time that this case has come before us on appeal. In April 2000, OCM Principal Opportunities Fund, L.P. (OCM), together with Pacholder Value Opportunity Fund, L.P., and Pacholder Heron Limited Partnership (collectively, Pacholder), initiated an action against CIBC, asserting claims that CIBC had engaged in fraud, misrepresentation, and violations of federal and state securities laws. TCW Shared Opportunity Fund II, L.P., TCW Shared Opportunity Fund IIB, L.L.C., TCW Shared Opportunity Fund III, L.P., TCW Leveraged Income Trust, L.P., and TCW Leveraged Income Trust II, L.P. (collectively, TCW), initiated a similar action in May 2001. These actions were later consolidated.

On October 15, 2003, following a jury trial, the trial court entered a judgment that awarded OCM, Pacholder, and TCW, respectively, $13,412,489, $2,440,504, and $16,249,490 in damages. CIBC appealed from the judgment, and OCM and Pacholder cross-appealed from the denial of their request for prejudgment interest under Corporations Code section 25500.

On May 4, 2007, while the appeal and cross-appeals were pending, respondents applied for renewal of the judgment pursuant to the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.).[1] The Los Angeles County Superior Court Clerk filed a notice of renewal of judgment on July 19, 2007. CIBC filed a motion to vacate the renewed judgment, which the trial court denied on September 25, 2007. CIBC noticed the appeal before us from the denial.

On December 5, 2007, we issued our opinion in the first appeal and related cross-appeals (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835 [68 Cal.Rptr.3d 828]).[2] We affirmed the judgment in favor of respondents, reversed the denial of

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

[2] The opinion was modified on matters not relevant here on December 26, 2007.

prejudgment interest, and remanded the matter to the trial court for further proceedings.

## DISCUSSION

■ CIBC contends that the trial court erred in denying its motion to vacate the renewed judgment, which argued that the renewal improperly accorded respondents compound postjudgment interest on the 2003 judgment. We disagree.

### A. *Renewal of Money Judgments*

■ Under the Enforcement of Judgments Law, a money judgment is enforceable for a 10-year period following the date of entry.[3] (§ 683.020.) The judgment creditor may renew the judgment by filing an application for renewal with the clerk of the court prior to the end of the 10-year period. (§ 683.120.) The renewal "does not create a new judgment or modify the present judgment," but merely extends the enforceability of the judgment—in effect, it resets the 10-year enforcement clock. (*Jonathan Neil & Associates, Inc. v. Jones* (2006) 138 Cal.App.4th 1481, 1489 [42 Cal.Rptr.3d 350].) Once a judgment has been renewed, a new application for renewal may not be submitted within five years of the previous renewal. (§ 683.110, subd. (b).) Although entry of the renewed judgment is a ministerial act accomplished by the clerk of the court (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262 [72 Cal.Rptr.3d 729]; § 683.150), the judgment creditor may challenge the renewal by filing a motion to vacate or modify the renewed judgment (§ 683.170, subd. (b)).

CIBC's contentions target the provisions in the Enforcement of Judgments Law governing the accrual of interest on a renewed judgment. Under section 685.010, "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (§ 685.010, subd. (a).) In turn, the term " '[p]rincipal amount of the judgment' " is defined as "the total amount of the judgment as entered or as last renewed," together with costs added to the judgment, with adjustments for partial satisfaction of the sums in question. (§ 680.300.) Upon an application for renewal of the judgment, the clerk of the court is directed to enter the renewal "show[ing] the amount of the judgment as renewed." (§ 683.150, subd. (c).) When, as here, the judgment does not require installment payments, "this

---

[3] A money judgment is "that part of a judgment that requires the payment of money." (§ 680.270.)

amount is the amount required to satisfy the judgment on the date of the filing of the application for renewal . . . ." (§ 683.150, subd. (c).) The amount ultimately required to satisfy a money judgment is characterized as "the total amount of the judgment as entered or renewed" with the addition of "interest added to the judgment as it accrues pursuant to Section[] 685.010 . . . ." (§ 695.210, subd. (b).)

## B. *CIBC's Contentions*

CIBC contends that the trial court (1) improperly construed the renewal provisions to allow the compounding of postjudgment interest upon renewal of the 2003 judgment; (2) permitted respondents to renew the 2003 judgment without establishing a risk to its enforceability; and (3) contravened article XV, section 1 of the California Constitution, which limits the interest rate on judgments to 10 percent per annum. For the reasons explained below, we reject these contentions.

CIBC's contentions present questions of first impression regarding the interpretation of the renewal statutes and the California Constitution. Generally, "[i]n construing constitutional and statutory provisions, . . . the intent of the enacting body is the paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) To determine this intent, we look first to the plain language of the law, read in context. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Both the legislative history of a statute and the wider historical circumstances of its enactment may also be considered in ascertaining the legislative intent. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)[4] Because the Legislature enacted the Enforcement of Judgments Law in 1982 upon the California Law Revision Commission's recommendation (8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 18, pp. 53–54), we may also consult the commission's comments on the relevant statutory provisions (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 530 [110 Cal.Rptr.2d 412, 28 P.3d 151]). "Whenever possible, statutes are to be interpreted as consistent with applicable constitutional provisions so as to harmonize both." (*Mendez v. Kurten* (1985) 170 Cal.App.3d 481, 485 [215 Cal.Rptr. 924].)

---

[4] We have taken judicial notice of the legislative history the parties have submitted regarding the renewal provisions and other laws related to CIBC's contentions. (Evid. Code, § 459; *People v. Superior Court (Ferguson)* (2005) 132 Cal.App.4th 1525, 1533 [34 Cal.Rptr.3d 481].)

### 1. *Compounding of Postjudgment Interest upon Renewal*

■ CIBC contends that the renewal provisions do not require that postjudgment interest be incorporated into the total amount of the renewed judgment so as to permit the accrual of interest upon interest. This contention fails in light of the plain language of the pertinent provisions, as well as the extrinsic evidence of legislative intent. Under the provisions, interest accrues on the "principal amount of a money judgment remaining unsatisfied," which is "the *total* amount of the judgment as . . . *last renewed*." (§§ 685.010, subd. (a), 680.300, italics added.) As the court observed in *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 894–895 [9 Cal.Rptr.2d 277] (*Westbrook*), the renewal provisions effectuate a compounding of postjudgment interest when a judgment is renewed: Accrued postjudgment interest on the judgment is incorporated into the principal of the renewed judgment, which then bears interest at the legal rate. The Law Revision Commission expressly noted this feature of the renewal procedure: "Renewal has the effect of compounding the interest on the judgment, since interest accrues on the total amount of the judgment as renewed [citations] and the judgment as renewed includes accrued interest on the date of filing the application for renewal [citations]." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 683.110, p. 76.)[5]

### 2. *No Requirement for Risk to Enforceability*

CIBC contends that the trial court erred in permitting the renewal when there was no danger that the judgment would not be paid. CIBC argues that the judgment was properly bonded pending the outcome of the appeal, and was enforceable until 2013. As explained below, this contention also fails in light of the language of the renewal provisions, and the available extrinsic evidence of legislative intent.

Prior to the 1982 enactment of the Enforcement of Judgments Law, California law provided two methods by which a judgment creditor could extend the enforcement period of a money judgment. Under former section

---

[5] Contrary to CIBC's suggestions, the legislative history of the Enforcement of Judgments Law shows that the Legislature implemented the Law Revision Commission's recommendations. As enacted, the pertinent renewal provisions (§§ 680.330, 683.110, 683.150, 685.010, 695.210) are materially identical to the recommended provisions, which the Law Revision Commission explained—in its accompanying commentary—permitted the compounding of interest. (Tentative Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) pp. 2186–2187, 2190–2196, 2199–2200, 2215, 2256.) Moreover, the Assembly and Senate Committees on the Judiciary adopted the relevant commentary by the Law Revision Commission as expressing their intent. (Assem. Com. on Judiciary, Rep. on Assem. Bills Nos. 707 & 798 (1981–1982 Reg. Sess.) p. 1; Sen. Com. on Judiciary, Rep. on Assem. Bills Nos. 707, 798 & 2332 (1981–1982 Reg. Sess.) p. 1.)

681, after entry of the judgment, the judgment creditor was entitled to a writ of execution regarding the judgment for a 10-year period. (8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment, § 22, pp. 60–61.) Once the 10-year period ended, former section 685 permitted the trial court to enforce the judgment upon a showing by the judgment creditor that there had been an "excusable failure" to seek satisfaction of the judgment. (*Alonso Inv. Corp. v. Doff* (1976) 17 Cal.3d 539, 543–544 [131 Cal.Rptr. 411, 551 P.2d 1243], italics omitted; see 8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment, § 22, p. 61.) This "[d]iscretionary enforcement had no time limit." (8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment, § 22, p. 61.)

In addition, the judgment creditor was entitled to commence an independent action on the judgment within the 10-year limitation period defined in section 337.5. (*Alonso Inv. Corp. v. Doff, supra*, 17 Cal.3d at p. 545; *United States Capital Corp. v. Nickelberry* (1981) 120 Cal.App.3d 864, 866 [174 Cal.Rptr. 814].) If the judgment creditor began an action within this period, "the creditor's right to recover remain[ed] alive, even though the 10-year period . . . subsequently expire[d]." (*Alonso Inv. Corp. v. Doff, supra*, 17 Cal.3d at p. 545.)

In enacting the Enforcement of Judgments Law, the Legislature abrogated the first method of extending the period for the enforcement of a judgment, and replaced the method with the renewal procedure described above (see pt. A., *ante*). The Law Revision Commission explained: "Renewal under this article permits enforcement of a judgment beyond the 10-year period prescribed by Section 683.020. This procedure supersedes the procedure under former Section 685 pursuant to which a judgment could be enforced upon noticed motion after the expiration of 10 years in the discretion of the court upon a showing of the reasons for failure to enforce the judgment during the first 10 years. This article does *not* require the judgment creditor *to demonstrate diligence* in enforcing the judgment, but if renewal is not accomplished within 10 years after entry of the judgment, the judgment becomes unenforceable." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 683.110, p. 76, italics added.)

The Legislature otherwise retained the second method of extending the period for enforcing a judgment (§ 683.050),[6] and linked the method to the provision governing the vacation of a renewed judgment. Subdivision (a) of

---

[6] Section 683.050 provides: "Nothing in this chapter limits any right the judgment creditor may have to bring an action on a judgment, but any such action shall be commenced within the period prescribed by Section 337.5."

section 683.170 states in pertinent part: "The renewal of a judgment pursuant to this article may be vacated on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect . . . ."

In our view, respondents were not obliged, upon renewing the 2003 judgment, to establish that its enforceability was at risk. Nothing in the renewal provisions suggests such a requirement; on the contrary, section 683.130 provides that an application for the renewal of a lump-sum money judgment may be filed "at any time before the expiration of the 10-year period of enforceability . . . ." (§ 683.130, subd. (a).) As the Law Revision Commission noted, the renewal provisions eliminated the judgment creditor's obligation under the abrogated procedure to explain the need for an extended enforcement period. Moreover, with exceptions not relevant here, challenges to a renewed judgment are limited to "ground[s] that would be a defense to an action on the judgment." (§ 683.170, subd. (a).) As an action on a judgment may be brought "at any time" within the 10-year period provided in section 337.5 (*United States Capital Corp. v. Nickelberry, supra*, 120 Cal.App.3d at p. 866), we conclude that judgments may be renewed at any time within the 10-year period provided in section 683.020.[7]

### 3. *No Violation of Constitutional Limits on Interest*

CIBC contends that the renewal procedure, as applied to the 2003 judgment, contravened article XV, section 1, subdivision (2) of the California Constitution, which limits interest on judgments to 10 percent per annum.[8] Because the renewal provisions incorporate accrued interest within the principal amount of the renewed judgment and authorize interest at the rate of 10 percent per annum on the principal amount of the renewed judgment, CIBC argues that the provisions accorded respondents interest that exceeds the constitutional limit. We disagree.

---

[7] The 10-year periods in question are not coterminous: The period applicable to renewals begins when judgment is entered, and may not be tolled, whereas the period applicable to actions on a judgment begins when the judgment is final, and is subject to tolling. (*Pratali v. Gates* (1992) 4 Cal.App.4th 632, 636–639 [5 Cal.Rptr.2d 733].) However, the fact that a judgment is subject to a pending appeal—and thus cannot be enforced as a final judgment in an independent action—is not a defense to the renewal of the judgment. (*Jonathan Neil & Associates, Inc. v. Jones, supra*, 138 Cal.App.4th at pp. 1488–1489.)

[8] Respondents contend that CIBC forfeited this contention by failing to raise it before the trial court. Because the contention raises a pure question of law on undisputed facts, we decline to find a forfeiture. (*Preserve Shorecliff Homeowners v. City of San Clemente* (2008) 158 Cal.App.4th 1427, 1433 [71 Cal.Rptr.3d 332].)

■ No court has addressed the precise issue CIBC has presented. Because the Legislature's intent in enacting the Enforcement of Judgments Law was to allow the compounding of interest upon a judgment's renewal (see pt. B.1., 2., *ante*), the focus of our inquiry is on whether the Constitution permits a reasonable construction consistent with the renewal provision. As our Supreme Court has explained: "Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, 'we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.' [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.' [Citations.]" (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161].)

■ In view of these principles, " 'where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. When the Legislature has once construed the constitution, for the courts then to place a different construction upon it means that they must declare void the action of the Legislature. It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the constitution, a statute passed by the Legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution.' " (*Methodist Hosp. of Sacramento v. Saylor, supra*, 5 Cal.3d at p. 692, quoting *San Francisco v. Industrial Acc. Com.* (1920) 183 Cal. 273, 279 [191 P. 26].)

■ In enacting the Enforcement of Judgments Law, the Legislature implemented provisions to avoid excessive compounding of interest. Section 683.110, subdivision (b), provides that "[a] judgment shall not be renewed under this article if the application for renewal is filed within five years from the time the judgment was previously renewed under this article." The Law Revision Commission stated: "By preventing the renewal of a judgment more

often than once every five years, subdivision (b) of Section 683.110 prevents the judgment creditor from renewing a judgment more frequently merely to compound the interest on the judgment." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 683.110, p. 76.)

The question before us, therefore, is whether article XV, section 1 of the California Constitution "positively and certainly" prohibits the compounding of postjudgment interest on renewed judgments at intervals of five or more years (*Methodist Hosp. of Sacramento v. Saylor, supra*, 5 Cal.3d at p. 692). California law has long regulated interest on loans and judgments, first by statute, then by initiative measure, and finally by Constitutional amendment. (See *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 170–172 [74 P.2d 252] (*Penziner*).) In 1918, an initiative measure expressly repealed the early statutes and set forth an uncodified statute (the 1918 Usury Law). (Stats. 1919, p. lxxxiii; Deering's Uncod. Initiative Measures & Stats. 1919-1 (1973 ed.) p. 35; *Penziner, supra*, 10 Cal.2d at pp. 170–172.) Sections 1 and 2 of the 1918 Usury Law set the interest rate on loans, forbearances, and judgments at seven percent per annum, but permitted parties to a written contract to agree to a rate not exceeding 12 percent per annum; in addition, section 2 barred parties to a contract from indirectly exceeding the rate of 12 percent per annum through an exchange of "money, goods or things in action, or in any manner whatsoever." (Stats. 1919, p. lxxxiii.) Section 2 also provided: "[I]n the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." (Stats. 1919, p. lxxxiii.) Section 3 accorded a party who paid interest exceeding the limits in sections 1 and 2 the right to recover "treble the amount of the money so paid or value delivered in violation of said sections."[9] (Stats. 1919, p. lxxxiii.)

---

[9] The 1918 Usury Law states in pertinent part: "Section 1[:] The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or a shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing." (Stats. 1919, p. lxxxiii, reprinted at Deering's Uncod. Initiative Measures & Stats. 1919-1, *supra*, p. 35.)

"Sec. 2[:] No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. Any

In November 1934, the California Constitution was amended to include former section 22 of article XX (article XX), which expressly superseded the 1918 Usury Law insofar as it was inconsistent with the amendment. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798, fn. 2 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Penziner, supra*, 10 Cal.2d at pp. 173–174.) Former section 22 of article XX provided in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be 7 per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 per cent per annum. [¶] No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money, goods or things in action."

■ In June 1976, former section 22 of article XX was amended and reenacted in its current form as section 1 of article XV of the state Constitution. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 346 [45 Cal.Rptr.2d 279, 902 P.2d 297].) Section 1 of article XV sets an annual interest rate of seven percent on loans and forbearances, but allows parties to a written contract to set the interest rate at up to 10 percent, or at the level of the Federal Reserve's discount rate plus 5 percent, on loans or forbearances involving real property.[10] In addition, section 1 of article XV—unlike its

---

agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed." (Stats. 1919, p. lxxxiii, reprinted at Deering's Uncod. Initiative Measures & Stats. 1919-1, *supra*, p. 40.)

"Sec. 3[:] Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery." (Stats. 1919, p. lxxxiii, reprinted at Deering's Uncod. Initiative Measures & Stats. 1919-1, *supra*, p. 78.)

"Sec. 4[:] Sections one thousand nine hundred seventeen, one thousand nine hundred eighteen, one thousand nine hundred nineteen and one thousand nine hundred twenty of the Civil Code and all acts and parts of acts in conflict with this act are hereby repealed." (Stats. 1919, p. lxxxiv, reprinted at Deering's Uncod. Initiative Measures & Stats. 1919-1, *supra*, p. 117.)

[10] With exceptions not relevant here, section 1 of article XV of the state Constitution states in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

"(1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a

predecessor—contains a separate provision regarding interest rates on judgments, which states in pertinent part: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum."[11]

We find guidance on the issue before us from our Supreme Court's decision in *Heald v. Friis-Hansen* (1959) 52 Cal.2d 834, 837 [345 P.2d 457] (*Heald*), which addressed the limitations on interest regarding loans found in former section 22 of article XX. There, the borrowers executed promissory notes that required annual interest payments at a rate of 10 percent or 12 percent per annum—the notes were ambiguous on this point—and provided that interest, if not paid when due, was to be incorporated into the principal and thereafter bear interest. (*Heald, supra*, 52 Cal.2d at pp. 835–836.) When the borrowers defaulted on the notes, the creditors demanded the balance due, plus interest on the balance calculated at a rate of 10 percent per annum, compounded annually. (*Id.* at p. 836.) The trial court determined that the notes imposed a 12 percent interest rate, and thus were facially usurious; in addition, it awarded the borrowers treble interest pursuant to section 3 of the 1918 Usury Law. (*Heald, supra*, 52 Cal.2d at pp. 836–837.)

---

rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or

"(2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended (or if there is no such single determinable rate of advances, the closest counterpart of such rate as shall be designated by the Superintendent of Banks of the State of California unless some other person or agency is delegated such authority by the Legislature).

"No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action."

[11] Regarding interest on judgments, section 1 of article XV of the state Constitution provides: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum. [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith."

Our Supreme Court affirmed the trial court's determination regarding the interest rate imposed by the notes, as executed, but reversed the award of treble damages, which was authorized "only where the *actual* payments of interest are in excess of the maximum permissible rate." (*Heald, supra,* 52 Cal.2d at p. 839, italics added.) In so ruling, the court concluded that former section 22 of article XX did not prohibit loan agreements requiring that interest be compounded annually at the maximum legal rate on the balance due: "[The borrowers] contend that, since the Constitution and the [1918 Usury Law] limit the compensation of a lender to 10 per cent per annum, a payment of interest at that rate if compounded annually after default is usurious. We do not agree. The constitutional limitation is that the lender shall not 'receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money,' and, where the interest is to be compounded *annually* at the maximum rate after default, the sum charged as interest in any one year will not exceed 10 per cent of the amount owed at the commencement of the year." (*Heald, supra,* 52 Cal.2d at p. 839.) The court further explained: "[W]here interest is compounded *annually* at the maximum rate after default, the sum charged as interest for any one year will not exceed the maximum rate upon the amount of money owed at the commencement of the year, but the sum charged will exceed that rate if the interest is compounded at shorter intervals." (*Id.* at p. 840.)

In our view, *Heald* is dispositive of the issue before us. Section 1 of article XV of the state Constitution, like former section 22 of article XX, contains no express prohibition regarding compound interest on loans or judgments; moreover, section 1 of article XV authorizes the Legislature to set the interest rate on judgments up to a maximum of 10 percent per annum, just as its predecessor permitted parties to set the interest rate on loans up to a maximum of 10 percent per annum.[12] The renewal provisions reset the 10-year enforcement clock while incorporating accrued interest within the principal of the renewed judgment; in this respect, they resemble the promissory notes at issue in *Heald,* which incorporated unpaid interest into the principal due on an annual basis. In view of *Heald,* the statutory renewal provisions—which allow the compounding of interest at intervals of five years or more, far less frequently than the notes in *Heald*—do not "positively and certainly" offend section 1 of article XV. (*Methodist Hosp. of Sacramento v. Saylor, supra,* 5 Cal.3d at p. 692.)

---

[12] As the phrase "10 percent per annum" occurs in the pertinent portion of article XV, section 1 and in the provision of article XX, former section 22 interpreted in *Heald,* we may properly infer that the phrase carries the meaning determined in *Heald.* (*County of Sacramento v. Hickman* (1967) 66 Cal.2d 841, 850 [59 Cal.Rptr. 609, 428 P.2d 593] [absent any contrary indication in a constitutional amendment, the amendment's terms are construed in the light of the interpretation in effect at the time of amendment's adoption].)

CIBC contends that the Court of Appeal's decision in *Westbrook, supra,* 7 Cal.App.4th 889, establishes that the Constitution prohibits the compounding of interest on judgments authorized by the renewal statutes. We disagree. There, the plaintiff prevailed on fraud claims, and the trial court issued a judgment that accorded the plaintiff an award of "compound interest [on the judgment] at the rate of ten percent (10%) per annum." (7 Cal.App.4th at p. 892, italics omitted.) In reversing the award of postjudgment interest, the court determined that "[t]he only exception to the rule that [postjudgment] interest on interest (i.e. compound interest) may not be recovered" is found in the renewal provisions, which permit the compounding of interest on renewed judgments at five-year intervals. (*Id.* at pp. 894–895.) The court reasoned that "[b]y allowing compounding over some unspecified lesser period," the trial court had effectively contravened the Legislature's intent to allow the compounding of interest on judgments only at intervals of five years. (*Id.* at p. 895.) The court in *Westbrook* thus relied on the renewal provisions in order to resolve the issue before it.

In so concluding, the court in *Westbrook* stated that the Constitution "limit[s] postjudgment interest to 10 percent simple interest." (*Westbrook, supra,* 7 Cal.App.4th at p. 893.) In a footnote, it added: "Since the Constitution . . . do[es] not specify simple or compound interest, we think that it limits all interest to a maximum of 10 percent. Thus, any rate, simple or compound, that exceeds 10 percent is prohibited." (*Id.* at p. 893, fn. 4, italics omitted.) The court advanced these opinions without discussing *Heald* or examining article XV, section 1 of the Constitution in its historical context; moreover, the court did not attempt to reconcile these statements with its reliance on the renewal provisions in resolving the issue before it. Because *Westbrook* does not address the question before us, it is not authority on the issue. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 [45 Cal.Rptr.2d 207, 902 P.2d 225].) To the extent *Westbrook* may suggest that the renewal provisions offend article XV, section 1, it is unpersuasive in view of *Heald.*

Pointing to the usury statutes in effect prior to the 1918 Usury Law, CIBC contends that the 1918 Usury Law and section 1 of article XV of the state Constitution must be construed as barring any form of compound interest on judgments. Former sections 1917 and 1918 of the Civil Code provided for a maximum interest rate of 10 percent per annum on loans in the absence of a written agreement to the contrary, but permitted parties to "agree in writing to *any* rate of interest" (italics added); in addition, Civil Code former section 1919 permitted parties to agree that interest, if "not punctually paid," was to be

incorporated into the principal of the loan.[13] Former section 1920 of the Civil Code provided: "Interest is payable on judgments recovered in the courts of this state, at the rate of seven per cent per annum, and no greater rate, but such interest must not be compounded in any manner or form."

CIBC contends that the broad prohibition against compound interest on judgments in Civil Code former section 1920 remains in force, arguing that the prohibition was incorporated in the 1918 Usury Law and not abrogated by the constitutional amendments regarding usury. Again, we disagree. Section 4 of the 1918 Usury Law expressly repealed Civil Code former section 1920 (see fn. 9, *ante*). Generally, the deletion of an express statutory provision, whether by the Legislature or popular initiative, implies an intent to change the substantive law. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 461 [279 Cal.Rptr. 834, 807 P.2d 1063] [Legislature]; *People v. Griffin* (1988) 46 Cal.3d 1011, 1031 [251 Cal.Rptr. 643, 761 P.2d 103] [initiative].) This doctrine ultimately relies upon the principle of *expressio unius est exclusio alterius* (*Fay v. District Court of Appeal* (1927) 200 Cal. 522, 538 [254 P. 896]): " 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . .' [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra*, 43 Cal.3d at p. 1391, fn. 13.) Under this principle, the 1918 Usury Law discloses an intent to eliminate the prohibition against compound interest on judgments in Civil Code former section 1920.

The language of the 1918 Usury Law itself supports this conclusion. The new law set interest rates on loans, forbearances, and judgments (§ 1), and expressly barred compound interest on loans and forbearances, unless the parties to the relevant contract agreed to it (§ 2). Notably, although the 1918 Usury Law reinstated the presumptive interest rate of 7 percent per annum on judgments found in Civil Code former section 1920, it omitted judgments from the provisions regulating compound interest, and otherwise imposed no prohibition against compound interest on judgments. The failure

---

[13] Civil Code former section 1917 provided in pertinent part: "Unless there is an express contract in writing fixing a different rate, interest is payable on all moneys at the rate of seven per cent [*sic*] per annum[,] after they become due, on any instrument of writing, except a judgment, and on moneys lent or due on any settlement of account, from the day on which the balance is ascertained, and on moneys received to the use of another and detained from him."

Civil Code former section 1918 provided: "Parties may agree in writing for the payment of any rate of interest, and it shall be allowed, according to the terms of the agreement, until the entry of judgment."

Civil Code former section 1919 provided: "The parties may, in any contract in writing whereby any debt is secured to be paid, agree that if the interest on such debt is not punctually paid, it shall become a part of the principal, and thereafter bear the same rate of interest as the principal debt."

to prohibit compound interest on judgments cannot reasonably be regarded as an oversight, as the 1918 Usury Law includes judgments with loans and forbearances in setting interest rates (§ 1). (*Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 252 [279 Cal.Rptr. 325, 806 P.2d 1360] [omission of restriction in initiative provision found in related provision of initiative implies that omission reflects voters' intent].) Had the intent underlying the 1918 Usury Law been to preserve the 7 percent interest rate *and* the prohibition against compound interest on judgments found in Civil Code former section 1920, the 1918 Usury Law could have simply omitted that provision from the statutes to be repealed.

Nothing in the extrinsic evidence before us regarding the voters' intent in enacting the 1918 Usury Law disturbs our conclusion on this matter. Ordinarily, such evidence does not control over an intent disclosed by the language of the law. (*Fay v. District Court of Appeal, supra*, 200 Cal. at p. 538; *California Country Club Homes Assn. v. City of Los Angeles* (1993) 18 Cal.App.4th 1425, 1439 [22 Cal.Rptr.2d 917].) The arguments submitted to the voters focused on the merits of imposing new usury regulations on private lenders, and were silent about the compounding of interest on judgments. In view of the language of the initiative expressly repealing prior law, this silence does not establish an intent to preserve the broad prohibition against compound interest on judgments in Civil Code former section 1920. (*People v. Griffin, supra*, 46 Cal.3d at p. 1031 [in the absence of evidence to the contrary, "the fact that the 1978 initiative deleted the premeditation requirement of the 1977 death penalty law provides an overwhelming inference that the voters intended to eliminate the premeditation requirement"]; *McGuire v. Wentworth* (1932) 120 Cal.App. 340, 344 [7 P.2d 729] [silence in arguments to voters regarding provision of initiative that operated to limit charter cities' authority over public funds does not support inference voters intended to preserve broad authority accorded under preinitiative law].) In sum, neither the 1918 Usury Law nor section 1, article XV of the California Constitution prohibit the compounding of interest under the renewal provisions of the Enforcement of Judgments Law.[14]

---

[14] CIBC's reliance on *Rogers v. Springfield Fire etc. Ins. Co.* (1928) 92 Cal.App. 537 [268 P. 679] (*Rogers*) for the contrary conclusion regarding the 1918 Usury Law is misplaced. In *Rogers*, the trial court issued a judgment in 1922 in favor of the plaintiff that omitted an express award of postjudgment interest. (92 Cal.App. at pp. 539–540.) The sole question before the appellate court was whether the plaintiff was entitled to such an award; no issue was raised regarding the compounding of interest on the judgment. In resolving the question in the plaintiff's favor, the appellate court remarked that "[t]he substance" of Civil Code former section 1920—which provided for postjudgment interest—had been adopted in the 1918 Usury Law. (*Rogers, supra*, 92 Cal.App. at p. 541.) As *Rogers* does not address the issue before us, it is not authority on the issue.

## DISPOSITION

The order denying the motion to vacate the renewed judgment is affirmed. Respondents are awarded their costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.