Filed 9/29/14  Leung v. Verdugo Hills Hospital CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AIDAN MING-HO LEUNG, | B251366 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC343985) |
| v. | |
| VERDUGO HILLS HOSPITAL et al., | |
| Defendants and Respondents. | |

APPEAL from post-judgment orders of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Affirmed.

LKP Global Law and Albert T. Liou; Esner, Chang & Boyer and Stuart B. Esner for Plaintiff and Appellant.

Fraser, Watson & Croutch, Stephen C. Fraser, Daniel K. Dik; Greines, Martin, Stein & Richland, Robert A. Olson and Feris M. Greenberger for Defendants and Respondents.

Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza and Tammy C. Weaver as Amici Curiae on behalf of Defendant and Respondent.

# INTRODUCTION

This appeal arises out of a medical malpractice action brought by plaintiff Aidan Leung, through his guardian ad litem, against, among others, Verdugo Hills Hospital (Hospital). This is the fourth time the case is before us. This appeal, taken from post-judgment orders rendered after the appeal on the merits had concluded, involves interpretation of our opinion in *Leung v. Verdugo Hills Hospital* (2008) 168 Cal.App.4th 205 (*Leung I*).

*Leung I* is based on the following circumstances. After the jury returned a verdict in favor of plaintiff and against Hospital, the trial court entered a periodic payments judgment. Hospital appealed from the judgment. The trial court calculated the amount of Hospital's appeal bond based upon the judgment's lump sum present value. Hospital petitioned for a writ of supersedeas to reduce that amount. Hospital contended that the appeal bond should have been calculated only on the portion of the judgment that was due or would become due during the pendency of the appeal.

In *Leung I,* we denied Hospital's petition. We held that *for purposes of calculating the appeal bond*, the trial court properly used the lump sum present value of the judgment because that methodology assured plaintiff that he would be able to collect the entire judgment in the event Hospital became insolvent during the appeal.

The appeal on the merits proceeded. It concluded last year when we affirmed the judgment. After we issued the remittitur, litigation commenced in the trial court about the amount of post-judgment interest to which plaintiff was entitled. Hospital agreed to pay, and did pay, interest on all amounts of the judgment that had become due during the appeal, including the periodic payments. Plaintiff, however, claimed, that *Leung I* held that during the pendency of the appeal, the judgment in effect was a lump sum present value judgment upon which

2

he was entitled to collect interest, an amount he calculated to be approximately $7.5 million. The trial court rejected plaintiff's argument.

In this appeal, plaintiff contends: "Under the law of the case doctrine, the present value judgment was the effective judgment during the pendency of this appeal, not the periodic payment judgment as the trial court ruled." We disagree. Plaintiff has inaccurately interpreted our opinion in *Leung I*. Under settled law, plaintiff was entitled only to interest on the periodic payments that became due during the appeal, interest that Hospital has paid him. We therefore affirm the trial court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Lawsuit*

Plaintiff sued Hospital and Dr. Nishibayashi for professional negligence alleging that as a result of their actions, he suffered irreversible brain damage.[1] Prior to trial, plaintiff reached a settlement with Dr. Nishibayashi in which the doctor agreed to pay the limits of his malpractice insurance ($1 million) and to participate in a trial in which a jury would allocate the defendants' respective fault and set damages. In exchange, plaintiff agreed to give Dr. Nishibayashi a release of liability. The trial court found that the settlement was not in good faith within the meaning of sections 877 and 877.6.[2] Nevertheless, plaintiff and the doctor proceeded with the settlement.

The case was tried to a jury. The jury returned a verdict finding both Hospital and Dr. Nishibayashi liable and assigned fault 40 percent to Hospital, 55

---

[1]    Plaintiff also named the doctor's professional corporation as a defendant. Our references to Dr. Nishibayashi refer also to his corporation.

[2]    All undesignated statutory references are to the Code of Civil Procedure.

3

percent to Dr. Nishibayashi, and 5 percent to plaintiff's parents. The jury awarded $78,376 in past medical damages, $82,782,000 in future medical damages (with a present cash value of $14 million), $13,300,000 in future lost earnings (with a present cash value of $1,154,000), and past and future general damages of $250,000.

2. *The Judgment and Appeal Bond*

At Hospital's request, the trial court entered a periodic payments judgment pursuant to section 667.7. The judgment found Hospital jointly and severally liable for 95 percent of plaintiff's economic damages and severally liable for its 40 percent share of his non-economic damages. The judgment required Hospital, among other things, to make periodic payments commencing November 1, 2008, continuing until either plaintiff's death or October 1, 2065, whichever came first. A detailed schedule setting forth the monthly payments for each year was attached to the judgment. The judgment also awarded plaintiff, among other sums: (1) $1,085,338.86 in prejudgment interest because Hospital had rejected plaintiff's section 998 offer to compromise (Civ. Code, § 3291) and (2) $221,034.93 for recoverable costs.

In *Leung I, supra,* 168 Cal.App.4th 204, we summarized the relevant facts regarding Hospital's posting of an appeal bond as follows.

"As part of the judgment, the [trial] court ordered the Hospital to provide security for the periodic payments within 30 days in the form of a bond from an admitted California surety, or an annuity from an approved list of companies sufficient to fund the periodic payments. The court also ordered that if the Hospital failed to post such security, then plaintiff would recover from the Hospital the sum of $14,893,277.56, representing the present value of the judgment.

4

"The [trial] court issued a separate stay of the judgment to expire 10 days after the last date on which a notice of appeal could be filed. The Hospital appealed from the judgment, and plaintiff filed a cross-appeal.

"The Hospital then filed an ex parte application requesting the court to set the amount of the appeal bond under section 917.1. The Hospital posited three alternative judgment amounts against which to apply the 1.5 multiplier: (1) the portion of the judgment presently due, plus that portion of the periodic payments that will come due during the estimated pendency of the appeal; (2) the preceding portions of the judgment, plus the cost of an annuity to secure the periodic payments portion of the judgment; or (3) the present value of the judgment. The Hospital advocated the first alternative. The court, agreeing with plaintiff, adopted the third, and required the Hospital to post a bond in the amount of more than $22 million ($22,339,916.34, or 1.5 times the $14,893,277.56 present value of the judgment).

"The Hospital filed a petition for writ of supersedeas in this court, requesting that we set aside the trial court's ruling and order the amount of the bond set at 1.5 times the amounts of the judgment that are presently due and that [would] likely come due during the appeal. We summarily denied the petition for failure to show entitlement to extraordinary relief.

"The Hospital then posted the required appeal bond of more than $22 million, at an annual premium of $64,680. Twenty days later, even though the posting of the appeal bond stayed the judgment and its requirement of security for the periodic payments, the Hospital purchased an annuity to secure the periodic payments at a premium of more than $5.1 million.[3]

---

[3] The trial court found that the $22 million appeal bond was sufficient both to stay execution of the judgment and to stay Hospital's obligation, as set forth in the judgment, to purchase an annuity.

"The Hospital moved under section 996.030 to substitute a lesser bond, arguing that the $22 million bond was excessive in light of the purchase of the annuity to secure the periodic payments. Again, the Hospital sought to have the bond amount calculated based on the portion of the judgment presently due plus that portion of the periodic payments that will come due during the estimated pendency of the appeal. The Hospital calculated the requested bond amount at $5,399,278.41 (assuming the appeal is pending up to Nov. 1, 2012) or $5,802,046.41 (assuming the appeal is pending up to Nov. 1, 2013). The trial court denied the motion.

"For the second time, the Hospital petitioned this court for a writ of supersedeas, and for the second time we summarily denied the petition. The California Supreme Court, however, granted the Hospital's petition for review and transferred the case back to us, with directions to vacate our denial and issue an order to show cause. We complied." (*Leung I, supra*, 168 Cal.App.4th at pp. 210-211.)

3. *Our Opinion Regarding the Appeal Bond*

In *Leung I,,* we held that the trial court properly set the amount of the appeal bond based on the lump sum present value of the judgment.

We explained: "Section 917.1 provides in relevant part that '[u]nless an undertaking is given, the perfecting of an appeal shall not stay enforcement of [a] judgment or order . . . for . . . [¶] . . . [m]oney or the payment of money . . . .' (§ 917.1, subd. (a)(1).) The purpose of the undertaking requirement is 'to protect the judgment won in the trial court from becoming uncollectible while the judgment is subjected to appellate review. [Citation.] A successful litigant will

6

have an assured source of funds to meet the amount of the money judgment, costs and postjudgment interest after postponing enjoyment of a trial court victory.' (*Grant v. Superior Court* (1990) 225 Cal.App.3d 929, 934.)  In implementing this purpose, section 917.1 does not tailor the amount of the undertaking to the peculiarities of the judgment.  To the contrary, it is rigidly formulaic:  'The undertaking shall be for *double the amount of the judgment or order* unless given by an admitted surety insurer in which event it shall be for *one and one-half times the amount of the judgment or order*.'  (§ 917.1, subd. (b), italics added.)  The statute provides no exception for lump sum judgments payable over time. . . .  [¶] . . .  It is undisputed that the present value of the damages (including costs and interest) set forth in the judgment is $14,893,277.56.  That figure, which is the amount that would be due were the damages to be paid as a lump sum, is logically the amount of the money judgment for bonding under section 917.1.  Requiring the lump sum judgment to be bonded is consistent with the purpose of section 917.1, in that it assures that the entire judgment will not become uncollectible if the judgment debtor becomes insolvent." (*Leung I, supra*, 168 Cal.App.4th at pp. 211-213, fn. omitted.)

We rejected Hospital's claim that section 667.7, which authorizes the trial court to craft a periodic payment judgment, transformed the present value of the judgment into a judgment of lesser value *for purposes of calculating the amount of the required undertaking*.  We explained: "Section 667.7 simply provides an alternative method, if future damages exceed $50,000, for ultimately paying those damages.  In such a case, the statute requires the court, on a party's request, to 'enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor *be paid in whole or in part by periodic payments rather than by a lump-sum payment*.'  (§ 667.7, subd. (a); see also *id*., subd. (f) [legislative intent, in part, was to 'authorize the entry of judgments in malpractice

7

actions against health care providers which provide *for the payment* of future damages through periodic payments rather than lump-sum payments' (italics added)].) In entering the periodic payments judgment, the court must determine the details of how the lump sum present value of the damage award will be paid out over time. These details include setting 'the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made.' (§ 667.7, subd. (b)(1).) In setting such a payment schedule, however, the court is not altering the amount of the judgment. It is simply determining how that judgment will be paid. As the California Supreme Court observed, 'the court's function . . . is similar to the authority long exercised by courts in *the disbursement of the proceeds of a judgment* under a number of well-established statutory schemes.' (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 376, italics added (*American Bank*).)" (*Leung I, supra*, 168 Cal.App.4th at pp. 213-215, fn. omitted.)

Following our decision in *Leung I*, the appeal on the merits proceeded.

### 4. *The Appeal on the Merits*

In *Leung v. Verdugo Hills Hosp.* (2011), previously published at 193 Cal.App.4th 971 [121 Cal.Rptr.3d 913] (*Leung II*), we reluctantly concluded that under the common law release rule, the plaintiff's non-good faith settlement with codefendant Dr. Nishibayashi released Hospital from its liability for economic damages. As a result, we reversed that portion of the judgment awarding plaintiff economic damages against Hospital. We therefore did not decide several claims advanced by Hospital related to that portion of the damages award and we did not address plaintiff's cross-appeal. As for Hospital's liability for plaintiff's non-economic damages, we found substantial evidence supported the jury's finding that Hospital's negligence was a legal cause of plaintiff's injuries.

8

The California Supreme Court granted review of our opinion. In *Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291 (*Leung III*), it upheld our conclusion that the evidence was sufficient to establish that Hospital's negligence was a legal cause of plaintiff's injuries. (*Id*. at pp. 308-310.) However, *Leung III* abrogated the common law rule that a plaintiff's settlement with, and release from liability of, one joint tortfeasor released all other joint tortfeasors from liability. (*Id*. at pp. 300-308.) As a result, Hospital, contrary to our earlier conclusion, was jointly and severally liable for plaintiff's economic damages. (*Id*. at p. 310.) The Supreme Court therefore remanded the case to us to address the contentions we had not reached in *Leung II*. (*Ibid*.)

In *Leung v. Verdugo Hills Hosp.* (*Leung IV*) (B204908, January 22, 2013), we addressed and rejected all of the parties' claims of error and affirmed the judgment in full.

We issued the remittitur on May 6, 2013.


5. *Subsequent Trial Court Proceedings Regarding Payment of Post-Judgment Interest*

By May 15, 2013, Hospital had paid plaintiff almost $5 million. It is undisputed that this sum included all that was due when the judgment was entered in November 2007 plus interest as well as each periodic payment that became due during the pendency of the appeal plus interest. Nonetheless, plaintiff ignored Hospital's request to acknowledge satisfaction of all amounts due through May 1, 2013. (§ 724.110.) As a result, Hospital sought an order from the trial court finding that it had satisfied payment of all amounts due under the judgment through May 1, 2013 and requiring plaintiff to furnish defendant with an acknowledgment of its partial satisfaction of the judgment.

9

Plaintiff responded by filing a motion to enforce Hospital's liability on its surety bond, claiming that Hospital still owed him approximately $7.5 million in post-judgment interest. His theory was that during the 5 & 1/2-year pendency of the appeal, the judgment was a lump sum present value $14.8 million judgment on which he was entitled to recover post-judgment interest at a rate of 10 percent per annum.[4] He contended that because *Leung I* held that the lump sum present value of the judgment was to be used for purposes of calculating the appeal bond pursuant to section 917.1, the judgment had become a lump sum present value judgment for all purposes, including accrual of post-judgment interest, during the appeal. According to plaintiff, the judgment did not become a periodic payments judgment until we issued the remittitur in May 2013.

The trial court granted Hospital's motion and denied plaintiff's motion. It found that Hospital had paid all amounts due from the entry of judgment through May 1, 2013. It rejected plaintiff's claim that additional interest was due, explaining:

> "The plaintiff has failed to establish it is law of the case that the 'judgment' for the purpose of calculating interest while on appeal is the lump sum judgment. To the contrary, the Court of Appeal found the lump sum present value judgment was the 'judgment' only for the purpose of calculating the amount of the undertaking. (See *Leung v. Verdugo Hills Hospital* (2008) 168 Cal.App.4th 205, 209 ['We hold that the lump sum present value of the judgment against the Hospital is the "amount of the judgment" for the purpose of calculating the undertaking required to stay the judgment under section 917.1.'].) The Hospital has elected to pay the judgment through a period payment plan and it is established that interest accrues as to periodic payments if and when they are not paid when due. (*Deocampo v. Ahn* (2002) 101 Cal.App.4th 758, 775-776; see also *Leung v. Verdugo Hospital*, January 22, 2013 unpublished opinion, p. 27.) Therefore,

---

[4] A money judgment earns interest at the legal rate (10% per annum) from date of entry. (Cal. Const., art. XV, § 1; *Pinecrest Productions, Inc. v. RKO Teleradio Pictures, Inc.* (1970) 14 Cal.App.3d 6, 11.)

the court declines to find that the present value judgment is the appropriate judgment to be used in calculating the interest that accrued while enforcement of the judgment was stayed pending appeal. Instead, the court finds that the interest due is calculated on the periodic payments which were not made when due and that there is no further sum due to enforce against the surety bond."

This appeal by plaintiff follows. (§ 904.1, subd. (a)(2).)

## DISCUSSION

Plaintiff's contention that he is entitled to additional interest on the judgment lacks merit.

In this case, the trial court entered a periodic payments judgment. "[I]nterest will only accrue on each individual periodic payment *as the payment becomes due.* [Citation.]" (*Deocampo v. Ahn, supra,* 101 Cal.App.4th at p. 776.) "The purpose of section 667.7 [periodic] payments is to provide compensation for losses that are to occur in the future. [Citation.] A plaintiff suffers no detriment if the future damages portion of the award is not paid when judgment is entered because the injury for which the payment is intended to compensate has not yet occurred. By definition, therefore, a periodic payment due on some future date is not unpaid until that date. 'Interest is only awardable to compensate for a delay in payment and compensation for future needs involves no such delay.' [Citation.]" (*Schiernbeck v. Haight* (1992) 7 Cal.App.4th 869, 874.)

Plaintiff does not dispute that the trial court entered a periodic payments judgment. By its terms, the judgment would become a present value judgment only if Hospital failed to post an appeal bond or purchase an annuity to fund the periodic payments. (See § 667.7, subd. (a) ["As a condition to authorizing periodic payments of future damages, the court shall require the judgment debtor who is not adequately insured to post security adequate to assure full payment of such

11

damages awarded by the judgment."].)  In this case, Hospital fulfilled both conditions imposed by the trial court.  First, it posted an appeal bond, and then it purchased an annuity.  Accordingly, the judgment retained its character as a periodic payments judgment during the appeal.

Plaintiff also does not dispute that Hospital has paid him the periodic payments that came due during the pendency of the appeal *plus interest* as well as the other amounts (plus interest) that Hospital was obligated to pay upon entry of judgment.

In light of these circumstances and the authorities cited above, the trial court's finding that plaintiff is not entitled to any additional payments of interest is unassailable.

To avoid that result, plaintiff argues that *during the pendency of the appeal*, the periodic payments judgment became a lump sum present value judgment that earned interest at the rate of 10 percent a year.  (See fn. 4, *ante*.)  Plaintiff claims that we reached that conclusion in *Leung I* and that the conclusion has become law of the case.  We disagree.

In *Leung I*, we addressed only one issue:  the amount to be used "for the purpose of calculating the undertaking required to stay the judgment under section 917.1."  (*Leung I, supra,* 168 Cal.App.4th at p. 209.)  We began with the premise that the trial court had entered a periodic payments judgment.  (*Id*. at p. 208.)  We held that the lump sum present value of the judgment was the amount to be used to determine the appeal bond because that approach best protects a plaintiff in the event the defendant becomes insolvent during the pendency of the appeal.  (*Id*. at p. 213.)  Contrary to what plaintiff suggests, we never held that during the appeal, a present value judgment was in effect earning interest.  In fact, we said nothing about the calculation of interest while the appeal was prosecuted.  We simply held

12

that the trial court had correctly set the amount of the appeal bond as being one and a half times the judgment's present value.

In reaching that conclusion, we rejected Hospital's argument that the appeal bond should have been set in a lower amount because a periodic payments judgment had been entered. We explained that "section 667.7 does not transform the present value of this judgment into a judgment of lesser value for purposes of calculating the amount of the required undertaking under section 917.1 [because it] simply provides an alternative method . . . for ultimately paying those damages." (*Leung I, supra,* 168 Cal.App.4th at p. 213.) Contrary to what plaintiff now argues, this passage does not mean that we held "that during the pendency of . . . Hospital's appeal from the judgment, the judgment was lump sum in nature." It meant only that entry of a periodic payments judgment did not change the sum upon which an appeal bond would be calculated.

Equally unavailing is plaintiff's reliance upon language we used when we rejected Hospital's claim that its purchase of the annuity meant that the present value of the judgment could not be the amount of the judgment for purposes of calculating the appeal bond. We explained: "The Hospital's purchase of the annuity did not reduce the amount of the judgment pending appeal. That amount was and remains approximately $14.8 million in present value. The purchase of the annuity merely effectuated one of the alternative methods specified in the judgment by which Hospital could satisfy the judgment. . . . The Hospital's premature purchase of the annuity [after the judgment had been stayed because it had filed a notice of appeal and obtained an appeal bond] was apparently a tactical choice – an attempt to present a change in circumstances so as to justify its renewed supersedeas petition. Regardless, by its purchase of the annuity the Hospital had no more authority to purportedly change the amount of the stayed judgment than did the trial court have the authority to purportedly change it by

13

enforcing the security condition." (*Leung I, supra*, 168 Cal.App.4th at p. 215.) This passage does not, as plaintiff argues, mean that we held that for purposes of calculating post-judgment interest, a present value judgment was in effect during the appeal. It simply meant that we rejected Hospital's argument that its purchase of the annuity changed the calculus for computing an appeal bond.

In sum, we reject plaintiff's contention that *Leung I* held "that it was the present value judgment that was the effective judgment during the pendency of the appeal." It follows that the doctrine of law of case has no application to this appeal. (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505 [the law of the case doctrine applies only to points of law expressly or implicitly determined in the prior appellate proceeding because they were essential to the court's decision].) Therefore, the trial court properly held that plaintiff was not entitled to additional post-judgment interest.

**DISPOSITION**

The orders appealed from are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.                    MANELLA, J.

14