[No. B204908. Second Dist., Div. Four. Nov. 13, 2008.]

AIDAN LEUNG, Plaintiff and Appellant, v.
VERDUGO HILLS HOSPITAL, Defendant and Appellant.

## COUNSEL

Richardson & Patel, Luan K. Phan, Albert T. Liou, Donald L. Saltzman; Esner, Chang & Ellis, Andrew N. Chang and Stuart B. Esner for Plaintiff and Appellant.

Thomas & Thomas, Michael Thomas, Maureen F. Thomas; Greines, Martin, Stein & Richland, Feris M. Greenberger, Jennifer C. Yang and Robert A. Olson for Defendant and Appellant.

Horvitz & Levy, David S. Ettinger and David M. Axelrad for California Medical Association, California Hospital Association and California Dental Association as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**WILLHITE, J.**—Verdugo Hills Hospital (Hospital) petitions for a writ of supersedeas directing the trial court to reduce the amount of its appeal bond. Code of Civil Procedure section 917.1 requires the posting of an undertaking to stay a money judgment pending appeal. (Code Civ. Proc., § 917.1, subd. (a)(1).)[1] It sets the amount of the undertaking, if provided "by an admitted surety," at "one and one-half times the amount of the judgment." (§ 917.1, subd. (b).) The Hospital's appeal is from a medical malpractice judgment which, as stated in the judgment, has a present value of approximately $14.8 million, but which has been entered as a periodic payments judgment under section 667.7 requiring monthly payments that cease in October 2065 or upon plaintiff's death, whichever occurs first. The trial court calculated the amount of the appeal bond based on the lump sum present value of the judgment. The Hospital contends that the amount of the bond should be calculated only on that portion of the judgment currently due or that may come due during the

---

[1] All undesignated section references are to the Code of Civil Procedure.

appeal. We hold that the lump sum present value of the judgment against the Hospital is the "amount of the judgment" for the purpose of calculating the undertaking required to stay the judgment under section 917.1.

## BACKGROUND

Through his guardian ad litem (his mother Nancy Leung), plaintiff Aidan Leung sued Verdugo Hills Hospital and Steven Wayne Nishibayashi, M.D., for professional negligence.[2] Plaintiff alleged that he was born at the Hospital in March 2003 showing symptoms of neonatal jaundice, but the Hospital failed to provide his parents sufficient warnings and information about the condition. He also alleged that Dr. Nishibayashi failed to diagnose and treat the condition. As a result, three days after birth plaintiff developed bilirubin deposits in his brain that caused severe brain damage and motor impairment.

The case was tried to a jury, which returned a verdict in July 2007 finding both the Hospital and Dr. Nishibayashi negligent. The jury awarded damages of $78,375 for past medical costs, and $250,000 for noneconomic damages. It awarded $82,782,000 for future medical care, and fixed the present value at $14 million. It awarded $13.3 million for loss of future earnings, with a present value of $1,154,000. Apportioning fault, the jury found the Hospital 40 percent negligent, Dr. Nishibayashi 55 percent negligent, and plaintiff's parents 5 percent negligent.

Following trial, plaintiff reached a court-approved settlement with Dr. Nishibayashi. He is not a party to this proceeding.

At the Hospital's request, following lengthy briefing and hearing, the court issued a periodic payments judgment in November 2007 pursuant to section 667.7. In the judgment, the court declared the Hospital jointly and severally liable for 95 percent of all economic damages found by the jury and severally liable for its 40 percent share of noneconomic damages. The court ordered that plaintiff would recover damages from the Hospital as follows: (1) $1,274,793.52, due immediately, representing noneconomic damages, past medical expenses, and a portion of future lost earnings and future medical expenses; (2) $330,055.63, due December 1, 2007, representing future medical expenses and other items from the date of judgment through October 31, 2008; and (3) monthly periodic payments beginning November 1, 2008, pursuant to an attached schedule, this portion of the judgment to cease upon plaintiff's death or October 1, 2065, whichever occurs first. The court also

---

[2] Plaintiff also named Dr. Nishibayashi's professional corporation, Steven Wayne Nishibayashi, M.D., Inc., as a defendant. Our references to Dr. Nishibayashi are meant to refer to his corporation as well.

awarded $1,085,338.86 in prejudgment interest under Civil Code section 3291, and $221,034.93 in costs.

As part of the judgment, the court ordered the Hospital to provide security for the periodic payments within 30 days in the form of a bond from an admitted California surety, or an annuity from an approved list of companies sufficient to fund the periodic payments. The court also ordered that if the Hospital failed to post such security, then plaintiff would recover from the Hospital the sum of $14,893,277.56, representing the present value of the judgment.

The court issued a separate stay of the judgment to expire 10 days after the last date on which a notice of appeal could be filed. The Hospital appealed from the judgment, and plaintiff filed a cross-appeal.

The Hospital then filed an ex parte application requesting the court to set the amount of the appeal bond under section 917.1. The Hospital posited three alternative judgment amounts against which to apply the 1.5 multiplier: (1) the portion of the judgment presently due, plus that portion of the periodic payments that will come due during the estimated pendency of the appeal; (2) the preceding portions of the judgment, plus the cost of an annuity to secure the periodic payments portion of the judgment; or (3) the present value of the judgment. The Hospital advocated the first alternative. The court, agreeing with plaintiff, adopted the third, and required the Hospital to post a bond in the amount of more than $22 million ($22,339,916.34, or 1.5 times the $14,893,277.56 present value of the judgment).

The Hospital filed a petition for writ of supersedeas in this court, requesting that we set aside the trial court's ruling and order the amount of the bond set at 1.5 times the amounts of the judgment that are presently due and that will likely come due during the appeal. We summarily denied the petition for failure to show entitlement to extraordinary relief.

The Hospital then posted the required appeal bond of more than $22 million, at an annual premium of $64,680. Twenty days later, even though the posting of the appeal bond stayed the judgment and its requirement of security for the periodic payments, the Hospital purchased an annuity to secure the periodic payments at a premium of more than $5.1 million.

The Hospital moved under section 996.030 to substitute a lesser bond, arguing that the $22 million bond was excessive in light of the purchase of the annuity to secure the periodic payments. Again, the Hospital sought to have the bond amount calculated based on the portion of the judgment presently due plus that portion of the periodic payments that will come due

during the estimated pendency of the appeal. The Hospital calculated the requested bond amount at $5,399,278.41 (assuming the appeal is pending up to Nov. 1, 2012) or $5,802,046.41 (assuming the appeal is pending up to Nov. 1, 2013). The trial court denied the motion.

For the second time, the Hospital petitioned this court for a writ of supersedeas, and for the second time we summarily denied the petition. The California Supreme Court, however, granted the Hospital's petition for review and transferred the case back to us, with directions to vacate our denial and issue an order to show cause. We complied, and have received additional briefing from the Hospital and plaintiff.[3]

## DISCUSSION

■ The Hospital contends that the amount of the appeal bond necessary to obtain a stay of a periodic payments judgment should be 1.5 times the amount of the judgment that is or may become due during the pendency of the appeal. A writ of supersedeas may issue to correct the amount of the bond required. (See *Gallardo v. Specialty Restaurants Corp.* (2000) 84 Cal.App.4th 463, 469 [100 Cal.Rptr.2d 884].) We hold, however, that the trial court properly set the amount of the appeal bond based on the lump sum present value of the judgment, and therefore deny the writ petition.

■ Section 917.1 provides in relevant part that "[u]nless an undertaking is given, the perfecting of an appeal shall not stay enforcement of [a] judgment or order . . . for . . . [¶] . . . [m]oney or the payment of money . . . ." (§ 917.1, subd. (a)(1).)[4] The purpose of the undertaking requirement is "to

---

[3] The California Medical Association, California Hospital Association, and California Dental Association have jointly requested permission to file an amicus curiae brief in support of the Hospital. We grant the request.

[4] Section 917.1 provides in full:

"(a) Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for any of the following:

"(1) Money or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action.

"(2) Costs awarded pursuant to Section 998 which otherwise would not have been awarded as costs pursuant to Section 1033.5.

"(3) Costs awarded pursuant to Section 1141.21 which otherwise would not have been awarded as costs pursuant to Section 1033.5.

"(b) The undertaking shall be on condition that if the judgment or order or any part of it is affirmed or the appeal is withdrawn or dismissed, the party ordered to pay shall pay the amount of the judgment or order, or the part of it as to which the judgment or order is affirmed, as entered after the receipt of the remittitur, together with any interest which may have accrued pending the appeal and entry of the remittitur, and costs which may be awarded against the appellant on appeal. This section shall not apply in cases where the money to be paid is in the actual or constructive custody of the court; and such cases shall be governed, instead, by

protect the judgment won in the trial court from becoming uncollectible while the judgment is subjected to appellate review. [Citation.] A successful litigant will have an assured source of funds to meet the amount of the money judgment, costs and postjudgment interest after postponing enjoyment of a trial court victory." (*Grant v. Superior Court* (1990) 225 Cal.App.3d 929, 934 [275 Cal.Rptr. 564].) In implementing this purpose, section 917.1 does not tailor the amount of the undertaking to the peculiarities of the judgment. To the contrary, it is rigidly formulaic: "The undertaking shall be for *double the amount of the judgment or order* unless given by an admitted surety insurer in which event it shall be for *one and one-half times the amount of the judgment or order.*" (§ 917.1, subd. (b), italics added.) The statute provides no exception for lump sum judgments payable over time.

It is true, as pointed out by amici curiae California Medical Association et al. (see fn. 3, *ante*), that in the case of appeals from spousal support orders, courts approve setting the amount of the appellate undertaking based on the spousal support installments that will come due during the probable duration of the appeal. (See, e.g., *Sharon v. Sharon* (1885) 67 Cal. 185, 220 [7 P. 456]; *Hogan v. Locke Paddon* (1928) 91 Cal.App. 606, 612 [267 P. 392]; *Schallman v. Haas* (1917) 33 Cal.App. 28, 30 [164 P. 336].) But this approach is the product of necessity in spousal support appeals, there being no other way to calculate the undertaking in the absence of any lump sum award. These decisions do not suggest that in a case such as this, in which there is a lump sum damage award that may be paid over time, the undertaking must be based only on the amounts due or to come due during the appeal rather than the lump sum judgment.

Here, certain portions of the judgment against the Hospital were due immediately, namely, $1,274,793.52 (representing noneconomic damages, past medical expenses, and a portion of future lost earnings and future medical expenses), $1,085,338.86 in prejudgment interest under Civil Code section 3291, and $221,034.93 in costs. The judgment also made $330,055.63

the provisions of Section 917.2. The undertaking shall be for double the amount of the judgment or order unless given by an admitted surety insurer in which event it shall be for one and one-half times the amount of the judgment or order. The liability on the undertaking may be enforced if the party ordered to pay does not make the payment within 30 days after the filing of the remittitur from the reviewing court.

"(c) If a surety on the undertaking pays the judgment, either with or without action, after the judgment is affirmed, the surety is substituted to the rights of the creditor and is entitled to control, enforce, and satisfy the judgment, in all respects as if the surety had recovered the judgment.

"(d) Costs awarded by the trial court under Chapter 6 (commencing with Section 1021) of Title 14 shall be included in the amount of the judgment or order for the purpose of applying paragraph (1) of subdivision (a) and subdivision (b). However, no undertaking shall be required pursuant to this section solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14."

due December 1, 2007 (representing future medical expenses and other items from the date of judgment through Oct. 31, 2008). The periodic payments portion of the judgment was ordered pursuant to an attached schedule, and required monthly payments beginning November 1, 2008, to cease upon plaintiff's death or October 1, 2065, whichever occurs first. It is undisputed that the present value of the damages (including costs and interest) set forth in the judgment is $14,893,277.56. That figure, which is the amount that would be due were the damages to be paid as a lump sum, is logically the amount of the money judgment for bonding under section 917.1. Requiring the lump sum judgment to be bonded is consistent with the purpose of section 917.1, in that it assures that the entire judgment will not become uncollectible if the judgment debtor becomes insolvent.

■ Contrary to the Hospital's assertions, section 667.7 does not transform the present value of this judgment into a judgment of lesser value for purposes of calculating the amount of the required undertaking under section 917.1. Section 667.7 simply provides an alternative method, if future damages exceed $50,000, for ultimately paying those damages. In such a case, the statute requires the court, on a party's request, to "enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor *be paid in whole or in part by periodic payments rather than by a lump-sum payment.*" (§ 667.7, subd. (a); see also *id.*, subd. (f) [legislative intent, in part, was to "authorize the entry of judgments in malpractice actions against health care providers which provide *for the payment* of future damages through periodic payments rather than lump-sum payments" (italics added)].)[5] In entering the periodic payments judgment, the court must determine the details of how the lump sum present value of the damage

---

[5] Section 667.7 provides in full:

"(a) In any action for injury or damages against a provider of health care services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages. In entering a judgment ordering the payment of future damages by periodic payments, the court shall make a specific finding as to the dollar amount of periodic payments which will compensate the judgment creditor for such future damages. As a condition to authorizing periodic payments of future damages, the court shall require the judgment debtor who is not adequately insured to post security adequate to assure full payment of such damages awarded by the judgment. Upon termination of periodic payments of future damages, the court shall order the return of this security, or so much as remains, to the judgment debtor.

"(b)(1) The judgment ordering the payment of future damages by periodic payments shall specify the recipient or recipients of the payments, the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made. Such payments shall only be subject to modification in the event of the death of the judgment creditor.

"(2) In the event that the court finds that the judgment debtor has exhibited a continuing pattern of failing to make the payments, as specified in paragraph (1), the court shall find the

award will be paid out over time. These details include setting "the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made." (§ 667.7, subd. (b)(1).) In setting such a payment schedule, however, the court is not altering the amount of the judgment. It is simply determining how that judgment will be paid. As the California Supreme Court observed, "the court's function . . . is similar to the authority long exercised by courts in *the*

---

judgment debtor in contempt of court and, in addition to the required periodic payments, shall order the judgment debtor to pay the judgment creditor all damages caused by the failure to make such periodic payments, including court costs and attorney's fees.

"(c) However, money damages awarded for loss of future earnings shall not be reduced or payments terminated by reason of the death of the judgment creditor, but shall be paid to persons to whom the judgment creditor owed a duty of support, as provided by law, immediately prior to his death. In such cases the court which rendered the original judgment, may, upon petition of any party in interest, modify the judgment to award and apportion the unpaid future damages in accordance with this subdivision.

"(d) Following the occurrence or expiration of all obligations specified in the periodic payment judgment, any obligation of the judgment debtor to make further payments shall cease and any security given, pursuant to subdivision (a) shall revert to the judgment debtor.

"(e) As used in this section:

"(1) 'Future damages' includes damages for future medical treatment, care or custody, loss of future earnings, loss of bodily function, or future pain and suffering of the judgment creditor.

"(2) 'Periodic payments' means the payment of money or delivery of other property to the judgment creditor at regular intervals.

"(3) 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider.

"(4) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

"(f) It is the intent of the Legislature in enacting this section to authorize the entry of judgments in malpractice actions against health care providers which provide for the payment of future damages through periodic payments rather than lump-sum payments. By authorizing periodic payment judgments, it is the further intent of the Legislature that the courts will utilize such judgments to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended. It is also the intent of the Legislature that all elements of the periodic payment program be specified with certainty in the judgment ordering such payments and that the judgment not be subject to modification at some future time which might alter the specifications of the original judgment."

*disbursement of the proceeds of a judgment* under a number of well-established statutory schemes." (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 376 [204 Cal.Rptr. 671, 683 P.2d 670], italics added (*American Bank*).)

The Hospital contends that the approximately $14.8 million present value of the judgment here cannot be the amount of the judgment under section 917.1. The reason: Under the periodic payments judgment entered by the trial court, the court ordered the Hospital to provide security for the periodic payments within 30 days in the form of a bond from an admitted California surety, or an annuity from an approved list of companies sufficient to fund the periodic payments. Only absent such security did the court order that plaintiff would recover from the Hospital the lump sum $14,893,277.56 present value. According to the Hospital, because it purchased an annuity as security for the periodic payments, the judgment will never be due as a lump sum. Rather, the judgment as it now exists requires periodic payments, approximately $3 million of which is currently due, plus future payments that cease upon plaintiff's death or October 1, 2065, whichever occurs first.

The Hospital's purchase of the annuity did not reduce the amount of the judgment pending appeal. That amount was and remains approximately $14.8 million in present value. The purchase of the annuity merely effectuated one of the alternative methods specified in the judgment by which the Hospital could satisfy the judgment. And it did so prematurely, *after* the judgment was already stayed. The court entered the judgment on November 2, 2007, and on the same day granted a stay through and including 10 days beyond the last day on which a notice of appeal could be filed. The Hospital filed its notice of appeal on January 2, 2008. Following the trial court's setting of the amount of the appeal bond at approximately $22 million, and this court's initial denial of supersedeas, the Hospital purchased its bond on February 4, 2008. It filed proof of the bond and a notice of stay on February 8, 2008. The Hospital did not purchase the annuity securing the periodic payments until February 28, 2008, 20 days after the entire judgment had been stayed pending appeal. The Hospital's premature purchase of the annuity was apparently a tactical choice—an attempt to present a change in circumstances so as to justify its renewed supersedeas petition. Regardless, by its purchase of the annuity the Hospital had no more authority to purportedly change the amount of the stayed judgment than did the trial court have the authority to purportedly change it by enforcing the security condition.

The Hospital contends that using the lump sum present value to fix the amount of the appeal bond would violate the purpose of section 667.7. In *American Bank, supra,* 36 Cal.3d 359, the court held that section 667.7 is rationally related to MICRA's (Medical Injury Compensation Reform Act)

goal of reducing insurance costs. The court referred, in part, to MICRA's legislative history suggesting that "one of the factors which contributed to the high cost of malpractice insurance was the need for insurance companies to retain large reserves to pay out sizeable lump sum awards. The adoption of a periodic payment procedure permits insurers to retain fewer liquid reserves and to increase investments, thereby reducing the costs to insurers and, in turn, to insureds." (*American Bank, supra*, 36 Cal.3d at pp. 372–373.) According to the Hospital, because appeal bonds must be secured by pledged assets, setting the bond amount based on the present value of the entire judgment—an amount that cannot come due during the appeal—undermines the purpose of section 667.7.

■ We note that the Hospital has presented no evidence concerning the amount of liquid assets it or its insurer has had to pledge to obtain its bond, and no evidence that its or its insurer's ability to invest has been materially impaired. Nor has the Hospital presented any evidence that the need to post appeal bonds based on the lump sum present value of medical malpractice judgments has overburdened the health care industry or its insurers. More importantly, that the Legislature intended section 667.7 to reduce the amount of liquid reserves necessary to *pay out* sizable lump sum judgments says nothing about whether the Legislature also intended to reduce the amount of assets (which may or may not be liquid) necessary to secure an appellate undertaking to *stay enforcement* of such a judgment. As we have noted, section 667.7 simply provides an alternative method for ultimately paying a future damage award. Nothing in section 667.7 (nor in MICRA as a whole) suggests that the Legislature was concerned about health care providers or their insurers having to pay appeal bond premiums, or about their having to pledge assets for the relatively short time the appeal bond is necessary.

Further, the Hospital's complaint that it has been required to pledge assets to bond the $14.8 million lump sum judgment rings particularly hollow. The Hospital unnecessarily spent more than $5.1 million to purchase an annuity to secure the periodic payments judgment, even though the judgment was stayed pending appeal. By contrast, the annual premium of the Hospital's $22 million appeal bond is only $64,680.

Finally, the Hospital contends that section 917.1, by its very language, contemplates that the amount of the judgment to be bonded is the amount that is currently due or that will come due up to 30 days after the remittitur is issued. Section 917.1, subdivision (b), provides in relevant part that "[t]he undertaking shall be on condition that if the judgment or order or any part of it is affirmed . . . , the party ordered to pay shall pay the amount of the judgment or order, or the part of it as to which the judgment or order is affirmed, as entered after the receipt of the remittitur [as well as interest and

costs that may be awarded]. . . . The undertaking shall be for double the amount of the judgment or order unless given by an admitted surety insurer in which event it shall be for one and one-half times the amount of the judgment or order. The liability on the undertaking may be enforced if the party ordered to pay does not make the payment within 30 days after the filing of the remittitur from the reviewing court." (§ 917.1, subd. (b).)

According to the Hospital, under these provisions the surety will pay any amount due that the judgment debtor does not pay within 30 days of the remittitur. Therefore, the amount of the judgment to be bonded under section 917.1 is necessarily only the portion of the judgment that is currently due or will become due before 30 days after the remittitur. Because under a periodic payments judgment the entire lump sum present value will not be due before issuance of the remittitur, that sum cannot be the amount of the judgment to be bonded.

█ The Hospital overstates the import of the relevant language. These provisions of section 917.1 do not suggest that the Legislature contemplated only the presently due amounts of a lump sum judgment, or amounts due within 30 days of the remittitur, need be bonded. These provisions do simply this. First, they set a necessary condition of the undertaking: following affirmance of the judgment in whole or in part, the liable party "shall pay the amount of the judgment," or such part of it as is affirmed, "as entered after the receipt of the remittitur." (§ 917.1, subd. (b).) Next, they set the amount of the undertaking: 1.5 times the amount of the judgment if given by an admitted surety; otherwise, double the amount. Finally, they provide the timeframe for enforcement of the undertaking: if the party fails to pay within 30 days after issuance of the remittitur, the undertaking may be enforced.

In stating that the undertaking may be enforced, the statute does not state that it may be enforced only for the amounts currently due or due within 30 days after the remittitur, rather than for the entire lump sum judgment. To the contrary, it is entirely consistent with the purpose of section 917.1—to secure the judgment pending appeal—that if the undertaking is enforced, the judgment creditor of a lump sum judgment payable over time be able to receive the entire judgment amount from the surety. If the bond were only in the amount that came due during appeal, the judgment creditor would have no assurance of collecting future payments, despite the fact that the judgment reflects a lump sum damage award.

We conclude that the trial court properly set the amount of the Hospital's appeal bond at 1.5 times the lump sum present value of plaintiff's judgment against the Hospital.

## DISPOSITION

The petition for writ of supersedeas is denied. Costs to plaintiff.

Epstein, P. J., and Suzukawa, J., concurred.

The petition of appellant Verdugo Hills Hospital for review by the Supreme Court was denied February 18, 2009, S168534. George, C. J., did not participate therein.