# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 19, 2018

**NO. A-1-CA-35285**

**MAURA SCHMIERER,**

    **Plaintiff-Appellant,**

**v.**

**THE TRIBAL TRUST, JIM M. GREEN a/k/a BRIGADIER GENERAL JIM M. GREEN, LILA GREEN a/k/a BRIGADIER GENERAL LILA GREEN, FREE LOVE MINISTRIES a/k/a AGGRESSIVE CHRISTIANITY MISSION TRAINING CORPS., BERNARD BANDARAS a/k/a ANDREW EDWARDS, STEVEN SCHMIERER a/k/a PHILIP JORDAN, and DAVE GANE,**

    **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Law Offices of Mel B. O'Reilly, LLC
Mel B. O'Reilly
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellant

Law Office of Derek V. Garcia, LLC
Derek Garcia
Albuquerque, NM

for Appellees Jim and Lila Green

The Allison Law Firm, PC
Michael Allison
Albuquerque, NM

for Appellees Banderas, Gain,
Schmierer, Free Love Ministries
and Tribal Trust

**OPINION**

**BOHNHOFF, Judge.**

{1}    Plaintiff Maura Schmierer (Schmierer) appeals from the district court's dismissal of her 2004 petition[1] seeking domestication and enforcement of a California state court judgment that she obtained in 1989. Notwithstanding the fact that Schmierer had revived the California judgment in 1999, the district court determined that enforcement of the judgment was time-barred pursuant to NMSA 1978, § 37-1-2 (1983), New Mexico's fourteen-year statute of limitations for enforcing judgments. For the reasons discussed below, we hold that the California judgment was not time-barred. We therefore reverse and remand to the district court for further proceedings.

**FACTUAL BACKGROUND**

{2}    This dispute has a lengthy history. According to Schmierer, she and her then-husband, Defendant Steven Schmierer, a/k/a Philip Jordan, became members of Defendant Free Love Ministries, a/k/a Aggressive Christianity Mission Training Corps, sometime in the 1980s. Defendants Jim and Lila Green (the Greens), who are

---

[1] Schmeirer denominated her pleading as a "petition" as opposed to a complaint, and referred to herself and the adverse parties as "petitioner" and "respondents" as opposed to "plaintiff" and "defendants," respectively. Elsewhere in the record, however, the parties are referred to as "plaintiff" and "defendants." To avoid confusion, we will continue the use of the "plaintiff" and "defendants" terminology.

married and are both referred to as "Brigadier Generals," control Free Love Ministries, which Schmierer characterizes as a cult. At some point before 1989, Schmierer fell out of favor with the Greens. Lila Green accused Schmierer of "spiritual adultery," "excommunicated" her, and confined her and two other women to a shed on property the Greens owned in Sacramento, California.

{3} Schmierer claims that, after three months of confinement in the shed, she escaped. She subsequently filed suit in the Sacramento County Superior Court in California, claiming false imprisonment. She named as defendants Free Love Ministries, the Greens, Steven Schmierer, and two other Free Love Ministries members, Bernard Bandaras a/k/a Andrew Edwards, and Dave Gane (collectively, the California Defendants). On March 10, 1989, the California court entered a default judgment against the California Defendants in the amount of $1,020,046.

{4} Schmierer claims that, following entry of the California judgment, the California Defendants undertook a series of actions to obstruct her efforts to satisfy the judgment. They first deliberately damaged, to the point of unhabitability, the Greens' Sacramento property. They then fled to Gridley, California, where the Greens purchased more property. After Schmierer located the California Defendants in Gridley, they fled to Oregon and purchased property under the names of other people and paid for all of the property in cash. Although Schmierer was able to seize the

Greens' property in Sacramento and Gridley, the proceeds were not sufficient to satisfy the judgment.

{5} Schmierer claims that in 1993, the California Defendants moved to New Mexico, again to frustrate her efforts to satisfy her judgment. In June 1995 they acquired a parcel of property in the vicinity of Fence Lake in Cibola County and titled the parcel in the name of "Confianza Trust." They acquired another, larger parcel in the same vicinity in July 1997 and titled that parcel in the name of "the Tribal Trust," an entity that they had created earlier that month. On March 22, 2004, after Schmierer had tracked the California Defendants to New Mexico and discovered the Fence Lake real estate transactions, she filed the present suit in the Thirteenth Judicial District Court in Cibola County, naming as defendants the California Defendants as well as the Tribal Trust. The following month, Cassandra M. Cuaron, as trustee of the Confianza Trust, conveyed the first parcel to "River of Life Trust," and the Greens, as trustees of the Tribal Trust, conveyed the second parcel to "Cheptsi-Bah Trust."

**PROCEDURAL BACKGROUND**

{6} A California statute, Cal. Civ. Proc. Code § 683.020 (West 1982), establishes a ten-year limit for enforcing judgments. However, Cal. Civ. Proc. Code §§ 683.110 to .150 (West 1982, as amended through 2013) permit and establish a procedure for "extend[ing] by renewal" a judgment for another ten years. Under California law, the

renewal "does not create a new judgment or modify the present judgment, but merely extends the enforceability of the judgment—in effect, it resets the [ten]-year enforcement clock." *OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*, 85 Cal. Rptr. 3d 350, 353 (Ct. App. 2008) (internal quotation marks and citation omitted).

{7}     Schmierer had renewed her California judgment on March 9, 1999, extending its enforceability for ten years. As renewed, and after accounting for the amounts recovered in partial satisfaction of the judgment as well as accrued interest, the amount of the judgment was $1,580,198.26. Thus, Schmeirer could have enforced her judgment in California at any time through March 9, 2009.

{8}     Schmierer's 2004 New Mexico petition contained two counts. In Count I, she sought to domesticate the 1989 California judgment, that is, she requested that "full faith and credit [be given] to the judgment pursuant to the laws of the United States of America." In Count II, Schmierer sought to enforce the judgment. She alleged that the California Defendants had fraudulently transferred their assets in violation of the Uniform Fraudulent Transfer Act, n/k/a the Uniform Voidable Transactions Act (UVTA), NMSA 1978, §§ 56-10-14 to -29 (1989, as amended through 2015), and that the assets had been transferred to entities, including the Tribal Trust, that were the

4

California Defendants' alter egos. She asked that the district court impose a constructive trust on those assets, among other relief.

{9}    Following service of process on Defendants, Lila Green filed a pro se response to summons that asserted, among other points, that the California judgment was stale under New Mexico law. None of the other Defendants filed any documents that might be characterized as an answer to Schmierer's petition. However, between 2004 and 2007, the Greens, Edwards, and the Tribal Trust filed several motions to dismiss, generally arguing that enforcement of Schmierer's judgment was barred by Section 37-1-2. Schmierer, in turn, moved for judgment on the pleadings, arguing that her renewed judgment was not untimely and was entitled to be given full faith and credit; Schmierer sought judgment on both counts of her petition. By orders entered on July 28, 2004, and April 17, 2007, the district court denied Defendants' motions, granted judgment on Count I of Schmierer's petition, but denied her motion as it related to Count II.

{10}    Beginning in 2004, Schmierer also sought to take the depositions of the Greens and inspect the Fence Lake properties. Following the Greens' failure to appear for their depositions and Defendants' refusal to permit the inspection of the properties, on December 6, 2006, the district court granted Schmierer's motion to compel the

5

requested discovery. The record reflects, however, that the Greens apparently continued to refuse to appear for depositions and permit inspection of the properties.[2]

{11} The district court held a one-day bench trial on February 1, 2012. None of the individual defendants appeared, although they were represented by counsel. Schmierer presented four witnesses. Schmierer along with Julie Gudino, another former member of Free Love Ministries, and Schmierer's son, Nathan Schmierer, also a former member, essentially corroborated Schmierer's allegations about her experience as a member of Free Love Ministries and Defendants' actions to obstruct collection of the 1989 judgment. Donald Sanchez, an employee of a local title company, testified about the 1997 acquisition of the Fence Lake parcel that was titled in the name of the Tribal Trust. Schmierer testified about her efforts to collect on the judgment in California and Oregon.

{12} The district court entered findings of fact and conclusions of law on December 30, 2014. The court determined that the 1999 renewal of the 1989 judgment "renew[ed] the effectiveness of the California [j]udgment for an additional period and did not create a new judgment at the time." As a result, "[t]he California judgment is time-barred and is not properly subject to domestication in New Mexico. New

---

[2]The record reflects no activity between early 2007 and early 2011. On March 9, 2011, the district court dismissed the case for lack of prosecution but then reinstated it on Schmierer's motion.

6

Mexico's fourteen[-]year statute for enforcement of a judgment runs from the date of the California judgment in 1989." Thus, the court effectively reversed its earlier grant of judgment on Count I of the petition. Notwithstanding the dismissal on statute of limitations grounds, the district court nevertheless also made findings that relate to Schmierer's request in Count II of her petition to enforce the judgment. First, the court found that the acquisition of the second Fence Lake property in the name of the Tribal Trust "was accomplished as the alter ego of Jim Green and Lila Green." Second, "Confianza Trust and Cheptsi-Bah Trust have not been joined as defendants and the [c]ourt is without jurisdiction to set aside those transfers." On December 3, 2015, the district court entered its judgment, dismissing Schmierer's petition. Schmierer's appeal followed. Defendants have not cross-appealed.

**DISCUSSION**

{13} On appeal, Schmierer advances the same arguments she made below in rebuttal to Defendants' statute of limitations defense: (1) the court erred in not entering a default judgment against Defendants, or alternatively barring them from asserting the statute of limitations defense, as a sanction for violating their discovery obligations and the court's order compelling discovery; (2) the court erred in not determining that the limitations period was equitably tolled based on Defendants' actions to conceal their assets and otherwise obstruct Schmierer's efforts to satisfy her judgment; (3) the

court erred in failing to give full faith and credit to the 1999 renewal of the 1989 judgment and, consistent with such action, determine that the 2004 petition was timely under Section 37-1-2. Schmierer also urges that the district court erred in not disregarding Defendants' transfers of real property to fictitious trusts or alternatively voiding the transfers pursuant to the UVTA, and otherwise permitting her to execute her judgment against those assets. Because we conclude that Section 37-1-2 did not bar enforcement of the 1999 renewed judgment, it is unnecessary to address Schmeirer's other arguments pertaining to the statute of limitations affirmative defense or whether Schmeirer preserved her argument that the district court erred in not entering a default judgment against the Defendants for failure to answer and appear for trial.

{14} "In cases where the facts relevant to a statute of limitation issue are not in dispute," we review de novo whether the district court correctly applied the law to the facts. *See N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 12, 145 N.M. 316, 198 P.3d 342; *State v. Kerby*, 2007-NMSC-014, ¶ 11, 141 N.M. 413, 156 P.3d 704.

{15} Schmeirer's claim against the Defendants involves a request for a New Mexico court to recognize and enforce a California judgment. We therefore look to Article IV, Section 1 of the United States Constitution, commonly known as the Full Faith

8

and Credit Clause, which provides that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State." The clause generally requires that:

> the judgment of a [s]tate court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other [s]tate the same credit, validity and effect which it has in the [s]tate where it was rendered, and be equally conclusive upon the merits; and that only such defenses as would be good to a suit thereon in that [s]tate can be relied on in the courts of any other [s]tate.

*Roche v. McDonald*, 275 U.S. 449, 451-52 (1928); *see also Willis v. Willis*, 1986-NMSC-035, ¶ 6, 104 N.M. 233, 719 P.2d 811 (stating that in the absence of a basis for concluding that a foreign judgment is void or not entitled to enforcement in the state in which it is rendered, New Mexico courts must give the judgment full faith and credit).

{16}     The first step in our full faith and credit analysis is to consider whether application of New Mexico law would bar Schmeirer's enforcement action. If it would, then, given that California courts have enforced the judgment in that state's courts in 2004, the second step is to address whether full faith and credit requires a New Mexico court to recognize the judgment notwithstanding the New Mexico law that otherwise would prohibit enforcement.

**A.     Section 37-1-2**

Section 37-1-2 provides:

9

Actions founded upon any judgment of any court of the state may be brought within fourteen years from the date of the judgment, and not afterward. Actions founded upon any judgment of any court of record of any other state or territory of the United States, or of the federal courts, may be brought within the applicable period of limitation within that jurisdiction, *not to exceed fourteen years from the date of the judgment*, and not afterward.

(Emphasis added.)

{17}     *Fischoff v. Tometich*, 1991-NMCA-144, 113 N.M. 271, 824 P.2d 1073, involved revival of a New Mexico judgment. There, the plaintiff obtained a money judgment against the defendant in 1980. Section 37-1-2 had been amended in 1983 to extend the limitations period from seven to fourteen years. In 1989, the judgment creditor had obtained a writ of execution from the district court pursuant to NMSA 1978, Section 39-1-20, which authorizes execution on a judgment "at any time . . . within seven years after rendition or revival of a judgment." Our Court reversed. We held that the proceeding whereby the judgment creditor had obtained the writ of execution was not an action founded upon a judgment that was governed by Section 37-1-2, and therefore Section 37-1-20 permitted a judgment creditor to obtain a writ of execution only within seven years after entry of judgment unless the judgment was revived. *Fischoff*, 1991-NMCA-144, ¶¶ 8-9, 11. However, we also noted that the judgment creditor was free to file a common law action to revive the judgment, which would be governed by Section 37-1-2, within that statute's fourteen-

year limitation period and, following revival, execution could be pursued for another seven years. *Fischoff*, 1991-NMCA-144, ¶¶ 4, 11, 15, 17.

{18}     *Walter E. Heller Western, Inc. v. Ditto*, 1998-NMCA-068, 125 N.M. 226, 959 P.2d 560, involved a foreign (federal) judgment but not revival. There, the plaintiff had obtained a money judgment against the defendant in federal bankruptcy court on August 18, 1982. On August 13, 1996, the plaintiff filed an action in state district court to revive the judgment. *Id.* ¶ 1. Significantly, the plaintiff did not ask the court to first domesticate the judgment, i.e., convert the judgment into a New Mexico judgment, and instead sought only to "revive[] the bankruptcy court judgment so that it could file a subsequent lawsuit on the revived judgment in the county and state of [Defendant]'s residence to execute on the revived judgment." *Id.* ¶ 7 (internal quotation marks omitted).

{19}     We held that the plaintiff "omitted an essential step." *Id.* ¶ 8. "To enforce a foreign judgment in New Mexico, a judgment creditor must first domesticate the judgment in a New Mexico district court. *Id.* ¶ 4 (citing *Galef v. Buena Vista Dairy*, 1994-NMCA-068, ¶¶ 1-7, 117 N.M. 701, 875 P.2d 1132). "[W]hen a foreign judgment is domesticated in a district court in New Mexico, that court has jurisdiction to address and resolve issues concerning the judgment, including revival." *Heller Western, Inc.*, 1998-NMCA-068, ¶ 5. A foreign judgment may be domesticated by complying with the filing requirements of the Foreign Judgments Act, NMSA 1978,

11

§§ 39-4A-1 to -6, or by bringing a common law action to enforce the judgment. *Heller Western, Inc.*, 1998-NMCA-068, ¶ 4. If the judgment creditor pursued the latter course of action, he would have to file an action to both domesticate and revive the bankruptcy court judgment within Section 37-1-2's fourteen-year limitations period:

> Section 37-1-2 sets the period to revive a New Mexico court judgment at fourteen years from the date of the judgment. It also limits actions to revive judgments of courts of record of other states, United States Territories, and federal courts to the applicable period of limitation within the jurisdiction of the court originating the judgments *so long as that period does not exceed fourteen years from the date of the judgment*.

*Heller Western, Inc.*, 1998-NMCA-068, ¶ 6 (emphasis added).

{20} As construed by *Fischoff* and *Walter E. Heller Western, Inc.*, Section 37-1-2 would bar Schmeirer's New Mexico action. The language emphasized above suggests that if under the laws of a sister state revival resulted in a new judgment, that new judgment could be domesticated in New Mexico within fourteen years of the revival date. However, revival under California law resulted only in an extension—beyond fourteen years—of California's limitations period applicable to enforcing a judgment. Therefore, unless full faith and credit mandates a different result given that Schmeirer could have enforced her 1989 judgment in a California court in 2004, *Walter E. Heller Western, Inc.* would require that Schmeirer's New Mexico action be brought by no later than 2003.

12

## B. Application of Full Faith and Credit to Revived Judgments

{21}     Notwithstanding *Roche v. McDonald*'s facially broad articulation of the scope of full faith and credit set forth above, the clause "does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' " *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (quoting *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 501 (1939)). In particular, a state may apply its own procedural rules, including statutes of limitations, to actions litigated in its courts without running afoul of the Full Faith and Credit Clause. *See Sun Oil Co.* at 722-29; *McElmoyle ex rel. Bailey v. Cohen*, 38 U.S. 312, 327-28 (1839) (holding that a Georgia statute of limitations could be asserted as a defense to a suit filed in that state to enforce a judgment rendered in South Carolina and stating that "the effect intended to be given under our Constitution to judgments, is, that they are conclusive only as regards the merits; the common law principle then applies to suits upon them, that they must be brought within the period prescribed by the local law, the lex fori, or the suit will be barred"); *Potomac Leasing Co. v. Dasco Tech. Corp.*, 2000 UT 73, ¶ 9, 10 P.3d 972 (explaining that because statutes of limitations are procedural, the application of the Utah statute of limitations to the enforcement of a foreign judgment does not offend the Full Faith and Credit Clause, even though the judgment would have been enforceable in the rendering state); *In re Marriage of Ulm*, 693 P.2d 181, 183 (Wash. Ct. App. 1984)

13

(same). The question therefore is whether California's authorization for the period of enforceability of its courts' judgments to be extended past fourteen years is properly characterized as procedural or substantive policy.

{22} Two United States Supreme Court decisions provide guidance. In *Union National Bank v. Lamb*, 337 U.S. 38 (1949), the plaintiff obtained a judgment in a Colorado state court in 1927 and then revived it in that state in 1945. *Id.* at 39. Missouri law limited the life of judgments to ten years after their original rendition or ten years after their revival, and did not allow judgments to be revived after ten years from their rendition. *Id.* Reasoning that the full faith and credit clause did not bar application of the forum state's law governing the limitation of actions, the Missouri Supreme Court concluded that it was not obligated to recognize "Colorado's more lenient policy as respects revival of judgments." *Id.* It therefore refused to enforce the judgment because, under Missouri law, the original judgment could not have been revived after 1937. *Id.* at 39-40.

{23} The United States Supreme Court observed that a forum state cannot "defeat the foreign judgment because it was obtained by a procedure hostile to or inconsistent with that of the forum." *Id.* at 42.

> Any other result would defeat the aim of the Full Faith and Credit Clause . . . . It is when a clash of policies between two states emerges that the need of the Clause is the greatest. It and the statute which implements it are indeed designed to resolve such controversies. There is no room for an exception . . ., where the clash of policies relates to

14

> revived judgments rather than to the nature of the underlying claim . . . .
> It is the judgment that must be given full faith and credit. In neither case
> can its integrity be impaired, save for attacks on the jurisdiction of the
> court that rendered it.
>
> Cases of statute of limitations against a cause of action on a judgment
> involve different considerations[.]

*Id.* at 42-43 (citations and footnote omitted). The Court thus effectively distinguished between enforcement of a forum state's statute of limitations governing judgments and its statutes for reviving a judgment. The former are procedural and can be applied to enforcement of the judgment of a sister state, while the latter, which reflect substantive *policy*, cannot. Because the Missouri Supreme Court had applied its revival laws instead of those of Colorado, the United States Supreme Court reversed. *Id.* at 43-45.

{24}    In doing so, however, the Court noted that the parties had raised the question whether under Colorado law "the 1945 [revived] Colorado judgment is not a new judgment and . . . the revivor did no more than to extend the statutory period in which to enforce the old judgment." *Id.* at 43. The Court declined to resolve the issue, determining instead that it could be addressed on remand. *Id.* at 44. However, the Court observed that the Missouri court's holding that "*whatever the effect of revivor under Colorado law*, the Colorado judgment was not entitled to full faith and credit in Missouri . . . cannot stand if . . . the Colorado judgment had the force and effect of a new one." *Id.* at 44-45 (emphasis added). This statement would suggest that

15

enforcement of a revived foreign judgment that is otherwise barred by the forum state's statute of limitations may depend on whether the revival results in a new as opposed to a merely extended judgment under the law of the rendering state.

{25} In *Watkins v. Conway*, 385 U.S. 188 (1966) (per curiam), the plaintiff had obtained a money judgment against the defendant in Florida state court in 1955. Five years and one day later, the plaintiff brought suit in Georgia state court to enforce the Florida judgment. *Id.* at 188. At that time, Georgia's statutes of limitations for judgments required that suits on a foreign judgment must be brought within five years, *see id.* at 189-90 (citing Ga. Code Ann. § 3-701 (1855-56) (current version at Ga. Code Ann. § 9-3-20 (1997)), but established a longer limitations period for enforcing domestic judgments. *Watkins*, 385 U.S. at 188-89. The Georgia court dismissed the plaintiff's petition as untimely. On appeal to the United States Supreme Court, the plaintiff argued that Georgia's different limitations periods for domestic and foreign judgments violated the Constitution's Full Faith and Credit Clause.

{26} The Court disagreed. It pointed out that, as construed by the Georgia courts, the Georgia statute of limitations for foreign judgments

> bars suits on foreign judgments *only if the plaintiff cannot revive his judgment in the state where it was originally obtained*. For the relevant date in applying § 3-701 is not the date of the original judgment, but rather it is the date of the latest revival of the judgment. In the case at bar, for example, *all appellant need do is return to Florida and revive his judgment*. He can then come back to Georgia within five years and file suit free of the limitations of § 3-701.

*Watkins*, 385 U.S. at 189-90 (emphases added) (citations omitted). So construed, Georgia's statute did not discriminate against the Florida judgment. Instead,

> it has focused on the law of [Florida]. If Florida had a statute of limitations of five years or less on its own judgments, the appellant would not be able to recover here. But this disability would flow from the conclusion of the Florida Legislature that suits on Florida judgments should be barred after that period. Georgia's construction of § 3-701 would merely honor and give effect to that conclusion. Thus full faith and credit is insured, rather than denied, the law of the judgment [s]tate.

*Watkins*, 385 U.S. at 190-91 (footnotes omitted). *Watkins* thus suggests that the question is simply whether the enforceability of the judgment is effectively extended in the rendering state, and not whether the revival results in a new judgment.

{27}     Legal commentators have disagreed on what lessons can be drawn from *Union National Bank* and *Watkins*. Restatement (Second) of Conflicts of Laws § 118 cmt. c (Am. Law Inst. 1971), focuses on the comment in *Union Nat'l Bank* about whether a renewed judgment has the effect of a new or an extended judgment:

> If under the local law of the [s]tate of rendition the effect of this revival is to create a new judgment, then suit on this judgment may not be held barred under full faith and credit in the sister [s]tate. The contrary will be true, however, if the effect of the revival in the [s]tate of rendition is not to create a new judgment but rather to prolong the effective life of the original judgment.

A contrary view is articulated in Peter Hay, Patrick J. Borchers & Symeon C. Symeonides, Conflict of Laws § 24.32, at 1487 (5th ed. 2010), which focuses on the language emphasized above in *Watkins*:

17

> Some uncertainty exists whether revival of the original judgment in the state of rendition will serve to overcome the recognizing forum's shorter limitation on the original judgment, assuming that the revived judgment itself is not barred by the limitation. One view [citing the foregoing *Restatement* comment] distinguishes between revival prolonging the original judgment and revival having the effect of creating a new judgment[.] . . . However, the implication in the U.S. Supreme Court's decision in *Watkins* . . . is that any revival of a judgment is entitled to full faith and credit.

Hay, *supra*, § 24.32, at 1487 (footnotes omitted).

{28} Courts in other jurisdictions that have considered the question note this debate. A majority, however, favor the latter approach. In *Huff v. Pharr*, 748 F.2d 1553 (11th Cir. 1984) (per curiam), the plaintiff had obtained a judgment against the defendant in California state court in 1972. *Id.* at 1554. In 1982 the plaintiff renewed the judgment under California law. *Id.* He then successfully brought suit in federal court in Florida to enforce the renewed judgment. On appeal, the Eleventh Circuit rejected the defendant's argument that the plaintiff could not "evade" Florida's ten-year statute of limitations for domesticating a foreign judgment by renewing his California judgment: "The *Watkins* Court noted that all the plaintiff needed to do was return to the state which entered the original judgment, revive his judgment, and then domesticate the new judgment with the five-year statutory period. This is exactly what the plaintiff in [Hay] has done." *Huff*, 748 F.2d at 1554.

{29} In *Durham v. Arkansas Department of Human Services*, 912 S.W.2d 412, 413 (Ark. 1995), the plaintiff's ex-wife had obtained a judgment for child support against

18

the plaintiff in Illinois state court in 1975. The judgment was revived under Illinois law in 1992, following which the Arkansas state agency brought proceedings to enforce the judgment against the plaintiff in that state's courts. *Id.* On appeal, a majority of the Arkansas Supreme Court concluded that Arkansas' ten-year statute of limitations for reviving and enforcing judgments did not bar the claim, *id.* at 414-15, notwithstanding the dissent's observation that under Illinois law a revival of a judgment does not create a new judgment but is "merely a continuation of that being revived." *Id.* at 415 (Roaf, J., dissenting) (internal quotation marks and citation omitted).

{30}     In *Jensen v. Fhima*, 731 N.W.2d 876 (Minn. Ct. App. 2007), the plaintiff had obtained a judgment against the defendant in California state court in 1994. *Id.* at 877. The plaintiff renewed the judgment under California law in 1999 and again in 2005. In 2006, plaintiff sought to enforce the judgment in Minnesota state court. *Id.* Without differentiating between revival that results in a new judgment as opposed to an extended judgment, the Minnesota court held that "a renewed or revived judgment is entitled to full faith and credit[,]", and therefore Minnesota's ten-year statute of limitations for enforcing judgments did not bar the plaintiff's claim. *Id.* at 881. "To conclude otherwise would be inconsistent and against the orderly enforcement of judgments." *Id.*

{31}     In contrast, in *Tillinghast v. Tillinghast*, 285 F. Supp. 418 (W.D. Tex. 1968), the plaintiff had sought to enforce a 1943 decree that was entered in her California divorce proceeding. *Id.* at 418-19. In 1965 she obtained an order from the California court that execution issue on the 1943 decree. She then brought suit in federal district court in Texas to enforce the 1965 order. *Id.* at 419. Without addressing *Watkins*, the federal court noted that, under *Union National Bank*, "where a judgment has been revived by a decision which, under the law of the state rendering it, is a new judgment, and does not merely extend the statutory period in which to enforce the old judgment, the judgment of revival is entitled to recognition in any other state under the [F]ull [F]aith and [C]redit [C]lause." *Tillinghast*, 285 F. Supp. at 419. The court determined, however, that the 1965 order "simply extended the statutory period for the enforcement of the judgment which had been entered in 1943, and did not constitute a new judgment entitled to recognition in this state under the [F]ull [F]aith and [C]redit [C]lause." *Id.* at 420. On this basis, the Court dismissed the enforcement proceeding.

{32}     We resolve this disagreement consistent with the approach taken by the Eleventh Circuit, the Arkansas Supreme Court, and the Minnesota Court of Appeals. *Watkins* is best understood to teach that, while forum states may apply their own statutes of limitations for the enforcement of judgments, they must treat foreign judgments that are revived in the rendering state in the same manner as the rendering

state would treat the revived judgment. Further, *Watkins* does not differentiate between revival procedures that result in new judgments versus those that result in merely extended judgments: "all appellant need do is return to Florida and revive his judgment." *Watkins* 385 U.S. at 189-190. Thus, if the rendering state will enforce a judgment that has been revived under that state's laws, then the forum state must do the same.

**C.     The District Court Erred in Concluding That Schmierer's 2004 New Mexico Action Was Time-Barred**

{33}     Schmierer's 1989 judgment was renewed in California in 1999 for a period of ten years. As stated above, under California law the renewal did not "create a new judgment or modify the present judgment, but merely extends the enforceability of the judgment—in effect, it resets the [ten]-year enforcement clock." *OCM Principal Opportunities Fund*, 85 Cal. Rptr. 3d at 353 (Ct. App. 2008) (internal quotation marks and citation omitted). Thus, the judgment remained subject to enforcement in the courts of California. To paraphrase *Watkins*, Schmierer accomplished "all she needed to do" to revive the enforceability of her judgment under California law. Therefore, under the Full Faith and Credit Clause her judgment was entitled to enforcement in New Mexico as well. To comply with the constitutional requirement, the "date of the judgment" as that term is used in the last sentence of Section 37-1-2 must be construed to be 1999, not 1989. Schmierer thus had until 2009, the deadline under

21

California law, to bring an action in New Mexico to enforce her judgment. Therefore, the district court erred in dismissing Schmierer's 2004 petition on the grounds that it was barred by Section 37-1-2.

{34} Defendants argue that *Watkins* is distinguishable, because it considered a five-year statute of limitations as opposed to New Mexico's "generous" fourteen-year statute. But nowhere in the opinion is the suggestion made that the analysis hinges on the relative length of the forum state's limitation period for enforcing foreign judgments. Rather, the focus was on giving full faith and credit, that is, upholding, the rendering state's policy decision that underlies its revival statutes. If California permits its judgments upon revival or renewal to be enforced for an additional period of time, then New Mexico must respect that policy and allow the renewed judgment to be enforced within New Mexico's limitation period for enforcing foreign judgments.

{35} Defendants also argue that, because Section 37-1-2 does not discriminate between New Mexico and foreign judgments, and instead establishes a fourteen-year limitations period for both, it should be applied as written. Defendants again miss the point of *Watkins*, that for purposes of applying statutes of limitations for the enforcement of judgments, the effective date of a revived judgment is the date of the revival as opposed to the original date of the judgment.

22

**CONCLUSION**

{36}    We reverse the district court's determination that Schmeirer's petition to domesticate her foreign judgment was untimely and that it lacked jurisdiction to set aside the transfers of property to Confianza Trust and Cheptsi-Bah Trust. We therefore remand this matter to the district court on Schmeirer's claim for enforcement of the California judgment to be decided on the merits.

{37}    **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**M. MONICA ZAMORA, Judge**